John C. HERTEL and George F. Killeen, Plaintiffs,

v.

CITY OF PONTIAC, City of Pontiac Stadium Authority, Detroit Lions, Inc., William G. Milliken, as Governor of the State of Michigan, Loren E. Monroe, as Treasurer of the State of Michigan, and National Football League, Defendants.

Civ. No. 78–71357.

United States District Court, E. D. Michigan, S. D.

May 4, 1979.

Martin T. Mayden, Detroit, Mich., for plaintiffs.

Alger H. Strom, Deputy City Atty., Dept. of Law, Pontiac, Mich., for two city defendants.

James R. Buschmann, Bodman, Longley & Dahling, Detroit, Mich., Daniel H. Margolis, James R. Loftis, III, Eric J. Branfman, Bergson, Brokland, Margolis & Adler, Washington, D. C., for defendant Detroit Lions.

George H. Weller, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Lansing, Mich., for two state defendants.

John R. Dykema, Nancy Garlock Edmunds, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., Hamilton Carothers, Paul Tagliabue, John J. McKetta, III, Covington & Burling, Washington, D. C. (general counsel), for defendant NFL.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

The plaintiffs in this action, two Michigan residents who reside in the metropolitan Detroit area, challenge the constitutionality of defendant National Football League's (NFL) "home" blackout rule. This rule prohibits television broadcasts of "home" football games in areas within 75 miles of the "home" stadium. Defendant Detroit Lions, Inc. is a franchise member of the NFL. The plaintiffs assert that the "home" blackout rule violates their right to equal protection under the Fourteenth Amendment to the Constitution of the United States and under Art. I, § 2 of the Michigan Constitution (1963), in that individuals without the 75-mile blackout radius can view the games on home television, while the plaintiffs and others within the blackout radius cannot so view the games.

All the defendants filed motions to dismiss or for summary judgment. At the close of oral argument, the Court took the motions under advisement.

■ The Fourteenth Amendment guarantees do not reach purely private conduct.

*Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); *Civil Rights Cases,* 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). It is only action taken by the state or attributable to it that is subject to the strictures of the Fourteenth Amendment. The conclusion that purportedly private conduct should actually be attributed to the state can only be reached after "sifting facts and weighing circumstances . . ." *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

In *Burton* the Eagle Coffee Shoppe, Inc. leased space for operation of a restaurant from Wilmington Parking Authority, an agency of the State of Delaware. The space was located in a public parking structure. In the lease the Authority covenanted to make the premises, including the decorative finishes, suitable for Eagle. The Authority further agreed to furnish heat and provide necessary repairs. Eagle refused to serve black patrons.

After reviewing the nature of the relationship between the State and the purported private actor, the Court in *Burton* held that

[t]he State has so far insinuated itself into a position of interdependence with Eagle that it must be recognized as a joint participant in the challenged activity, which, on that account, cannot be considered to have been so "purely private" as to fall without the scope of the Fourteenth Amendment.

365 U.S. at 725, 81 S.Ct. at 862, 6 L.Ed.2d at 52. Where the state merely leases land to a private actor, there may be a requirement of a sufficient nexus between the state action and the private discrimination. *See Golden v. Biscayne Bay Yacht Club,* 530 F.2d 16 (5th Cir. 1976). The Court's initial inquiry, then, is to determine whether the relationship between the State and the private parties in this case is one of interdependence.

### I. STATE ACTION

■ The City of Pontiac Stadium Authority ("Authority") leases the Silverdome to the City of Pontiac, which in turn subleases to the Detroit Lions. The Lions pay as annual rent the greater of $504,000 or 7%

of ticket sales. The City collects a "head charge" of $1.50 per ticket and has complete control of revenue from parking and the food, beverage, and souvenir concessions. In return, the City is responsible for maintenance, repair, and police supervision. Further, the State of Michigan annually appropriates $800,000 to the Authority. It is obvious that the financial success of this arrangement for the City depends upon the size of the crowd the home games draw. While the City's responsibilities remain relatively constant in cost, the City's revenues are directly keyed into home game attendance.

The relationship between the State and the private parties here is more interdependent than that which existed in *Burton*. Thus, the nature of the relationship shown here compels the conclusion that the conduct of the purported private actors should be treated as that of the State. Furthermore, since the 75-mile blackout rule has as its sole purpose and intent the increase of home game attendance, the Court would find state action here even if a nexus between the specific challenged conduct and the State were required to be shown. As Professor Tribe has stated, "the more government gains (and the more it appears to gain) by the way in which a [private] choice is made, the clearer is the case for treating the choice as one for which government bears responsibility." Tribe, *American Constitutional Law*, § 18–7 at 1171–72 (1st ed. 1978).

## II. NATURE OF REVIEW

■ Once it is determined that conduct is subject to Fourteenth Amendment review, the crucial issue becomes the nature of that review. The traditional equal protection test of "rational relationship" is utilized in the sphere of economic and social legislation. This test only requires the state to show (1) a legitimate governmental interest and (2) that the classifications drawn are reasonably suited to achieve the government interest. *Allied Stores of Ohio v. Bowers*, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959).

■ In *Alan v. Wayne County*, 388 Mich. 210, 356, 200 N.W.2d 628, 699, the Michigan Supreme Court held that "[t]he acquisition, operation and subleasing of a stadium for the use of professional sports organizations may be a legitimate public purpose." The operation of a profitable stadium, or at least one which does not drain the public fisc, must necessarily also be a proper public purpose. In this case the classification drawn—geographic area—is one of the so-called "natural" classifications. There is not involved here either a suspect criterion or a fundamental interest so as to trigger "strict scrutiny." *See Harper v. Virginia Board*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); *N. A. A. C. P. v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). Nor do we have any of the semi-suspect criteria (sex, age, legitimacy) which would trigger a possible middle tier of review, the so-called "rationality with a bite." *Cf. Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Therefore, it is clear that the proper nature of Fourteenth Amendment review here is the rational relationship test.

The plaintiffs have attempted to state a claim under the Equal Protection Clause of the Michigan Constitution (1963), Art. I, § 2. The general nature of equal protection review under the Michigan Constitution is also "rational" or "reasonable relationship." *See, e. g., O'Donnell v. State Farm Ins.*, 404 Mich. 524, 273 N.W.2d 829 (1979); *Alexander v. City of Detroit*, 392 Mich. 30, 219 N.W.2d 41 (1974). However, where the challenged conduct seeks to carve out a discrete exception to a general rule and this conduct is not experimental, the Michigan courts may apply "the substantial-relation-to-the-object test." *Manistee Bank v. McGowan*, 394 Mich. 655, 671, 232 N.W.2d 636, 642 (1975). Nothing has been shown to the Court to indicate that the viewing of "home" football games on home television is a general rule, so as to bring the challenged conduct within stricter review under Michigan law.

The plaintiffs contend that inasmuch as the rational relation test was formulated in deference to legislative judgment, it is inappropriate where the challenged conduct is the result of private initiative. In no case

cited to the Court, nor in any case found by it, has any other court found state action present in order to allow equal protection review, but then change the nature of that review because private parties make the decisions which cause the action being challenged. Such would be inconsistent and would ignore the fact that review was obtained in the first place because the plaintiffs claim that the private conduct should be attributed to the State.

## III. APPLICATION OF THE TEST

 Is the 75-mile blackout rule rationally related to the profitable operation of the Silverdome? In view of the facts that the blackout rule is obviously intended to increase "home" game attendance and that the governmental actors share revenues produced thereby, it is difficult to imagine a rule more rationally related to the profitable operation of the Silverdome.

Therefore, under the proper review, there is no deprivation of equal protection under either the Fourteenth Amendment to the United States Constitution or the Michigan Constitution (1963), Art. I, § 2.

Summary judgment for the defendants will be entered, without costs.