ALEXANDER v CITY OF DETROIT

Docket No. 83046. Submitted April 15, 1986, at Detroit. Decided
September 15, 1986. Leave to appeal applied for.

Shirley Alexander and others filed a class action suit against the
City of Detroit in Wayne Circuit Court in 1969 challenging the
constitutionality of a Detroit refuse collection ordinance appli-
cable only to apartment buildings comprised of more than four
units. In 1971, the trial court held that the ordinance was
unconstitutional and entered a judgment in favor of the plain-
tiff class for $1,600,000, representing the amount in refuse
charges that had been paid to the city during implementation
of the ordinance. On March 6, 1975, the court issued an order
compelling the city to commence payment of the judgment. The
city issued checks on the basis of a list of property owners and
mailing addresses relating to all properties that had been
assessed the unconstitutional fee. The court also ordered that
checks issued to unlocated class members be deposited on their
behalf in an escrow account held by the court while continued
efforts were made to locate them. Six years passed, after which
the court learned that plaintiffs' attorneys were about to re-
quest an increase of the 1975 attorney fee award and appointed
a guardian ad litem on behalf of the unlocated class members.
In April of 1981, plaintiffs' attorneys filed their petition to
modify the 1975 award of attorney fees. In June, 1981, the
attorney general filed an appearance and intervened as a
matter of right, asserting a claim to the undistributed judg-
ment under the Michigan Code of Escheats. The attorney
general also served a formal claim upon the guardian ad litem.
The guardian ad litem filed with the court a report on his
efforts to locate missing class members and a petition for fees
and expenses incurred in performing his duties as guardian ad
litem. The trial court issued an opinion denying plaintiffs'

REFERENCES

Am Jur 2d, Abandoned, Lost, and Unclaimed Property §§ 6-11, 33,
34.

Am Jur 2d, Courts §§ 10, 17, 171.

See the annotations in the Index to Annotations under Abandon-
ment of Property or Right; Escheat.

petition for more attorney fees and took under advisement the guardian ad litem's request for fees and expenses. The court also ruled that the class action was a spurious one and that class members would have to opt in prior to recovering their share of the judgment. Publication of notice of the action and judgment was ordered, giving unlocated class members until April 30, 1982, to submit to the court written claims for their portion of the judgment. After April 30, 1982, recovery would be precluded. On March 16, 1982, the attorney general filed a supplemental claim on behalf of the unlocated class members as their lawful successor in interest. At the same time, the Wayne County Public Administrator, at the request of the State Public Administrator, commenced related proceedings in Wayne Probate Court. On April 1, 1982, the probate court appointed the county public administrator as the administrator of the individual estates of the unlocated property owners involved in the class action. Prior to the April 30, 1982, cutoff date, the county public administrator filed a claim in the circuit court action on behalf of those persons. On May 4, 1982, the attorney general filed a motion to remove the guardian ad litem on the ground that the attorney general and the county public administrator adequately represented the interests of the unlocated class members. The motion was denied. The trial court, Susan D. Borman, J., finally disposed of all funds remaining in the judgment account. The court awarded $38,190 to plaintiffs' attorneys for fees incurred after March of 1975, and $78,320.68 to the guardian ad litem for fees and costs incurred on behalf of the unlocated class members. The court denied the attorney general's claim to the undistributed judgment fund on the ground that the unlocated class members never submitted their written claims to the court and thus were never owners of the property which the state sought to escheat. The court instead ordered that the balance of the judgment fund be paid to the City of Detroit as the former owner. The attorney general appealed as of right, claiming that the remaining funds should escheat to the state.

The Court of Appeals *held:*

1. The trial court erred in holding that the unlocated class members never filed written claims and that they were therefore not entitled to any portion of the judgment fund and the Code of Escheats thus did not apply. The unlocated class members did, in fact, file effective written claims as to their portions of the undistributed judgment fund through the actions of the Wayne County Public Administrator.

2. The trial court did not err in refusing to compel production

of a memorandum of law prepared by the attorney for the guardian ad litem.

3. The trial court did not exceed the scope of its authority when it appointed a guardian ad litem to represent the unlocated class members and their interests in the undistributed judgment fund.

Reversed in part, affirmed in part and remanded.

1. ABANDONED AND LOST PROPERTY — ADMINISTRATION OF PROPERTY — STATE PUBLIC ADMINISTRATOR.

The state public administrator, or someone acting at the administrator's behest, may institute proceedings in probate court to provide for the administration of abandoned property (MCL 567.33; MSA 6.1053[23]).

2. ESCHEATS — CLASS ACTIONS — UNCLAIMED PORTIONS OF JUDGMENT FUND.

The filing by a county public administrator of a written claim on behalf of named but unlocated members of a class action in which a judgment has been rendered and the unclaimed amount of the judgment paid over to the court may entitle the unlocated members to their portions of the undistributed judgment fund and therefore make the Michigan Code of Escheats applicable to any unclaimed amount of the fund (MCL 567.11 *et seq.;* MSA 26.1053[1] *et seq.*).

3. COURTS — CIRCUIT COURT — JUDGMENT FUNDS — DISTRIBUTION OF FUNDS.

The circuit court has the express statutory authority to order a judgment debtor to pay into the court all or part of a judgment to be distributed to the judgment creditor, and once the judgment has been deposited with the court, the court is vested with a wide latitude of discretion in managing the deposited funds (MCL 600.572, 600.573, 600.1465, 600.6137; MSA 27A.572, 27A.573, 27A.1465, 27A.6137).

4. COURTS — CIRCUIT COURT — JUDGMENT FUNDS — DISTRIBUTION OF FUNDS.

A circuit court has the authority to exercise its discretion and take whatever steps are necessary to properly preserve, manage, and distribute funds contained in a judgment account so long as its actions are consistent with the primary goal of proper distribution.

5. COURTS — CIRCUIT COURT — GUARDIAN AND WARD — CLASS ACTIONS.

A circuit court has the inherent authority to appoint a guardian

to protect the interests of named but unlocated members of a class action in postjudgment proceedings.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard L. Hammer, Jr.,* Assistant Attorney General, for intervening plaintiff.

*Donald Pailen,* Corporation Counsel, *Abigail Elias,* Deputy Corporation Counsel, and *Joseph N. Baltimore,* Assistant Corporation Counsel, City of Detroit Law Department, for City of Detroit.

*Bodman, Longley & Dahling* (by *Randolph S. Perry*), for Theodore Souris, guardian ad litem.

Before: M. J. KELLY, P.J., and SHEPHERD and C. W. SIMON,* JJ.

PER CURIAM. This is a class action against the City of Detroit in which all that remains to be determined is the proper distribution of funds remaining in a judgment escrow account. On January 21, 1985, the trial court ordered that the funds be made payable to defendant City of Detroit on the theory that the city was the last "owner" of the money contained in escrow. The Attorney General of Michigan appeals as of right claiming that the remaining funds should escheat to the state. We agree with the attorney general and reverse the judgment of the trial court.

Plaintiffs filed this action in 1969, challenging the constitutionality of a Detroit refuse collection ordinance applicable only to apartment buildings comprised of more than four units. In 1971, the trial court held that the ordinance was unconstitutional and entered a judgment in favor of plaintiff class for $1,600,000, representing the amount in refuse charges that had been paid to the city

---

* Circuit judge, sitting on the Court of Appeals by assignment.

during implementation of the ordinance. The trial court's decision was affirmed by the Supreme Court in *Alexander v Detroit,* 392 Mich 30; 219 NW2d 41 (1974). When the Supreme Court remanded this case back to the trial court for further proceedings regarding the judgment, there was approximately $1,170,000 in the judgment fund yet to be distributed to class members.

On March 6, 1975, the trial court issued an order compelling the city to commence payment of the judgment.[1] The city apparently had available to it a list of property owners and mailing addresses relating to all properties that had been assessed the unconstitutional refuse collection fee. On the basis of this list, checks were prepared for mailing to all of those individuals and businesses. It was soon discovered that some of the addresses were obsolete. This prompted the trial court to issue an amended order directing that checks issued to unlocated class members be deposited on their behalf in an escrow account held by the court while continued efforts were made to locate them.

Six years passed with no significant court activity. In January of 1981, the trial court[2] learned that plaintiffs' attorneys were about to request an increase of the 1975 attorney fee award and appointed former Michigan Supreme Court Justice Theodore Souris to informally act as guardian ad litem on behalf of the unlocated class members. On April 14, 1981, plaintiffs' attorneys filed their petition to modify the 1975 award of attorney fees. In response to that petition, the trial court for-

---

[1] By order of March 24, 1975, the trial court awarded $800,000 in plaintiff's attorney fees and $13,378.07 in expenses. These fees and costs were to be paid out of the judgment fund and were to be assessed against each class member on a pro rata basis.

[2] At this point, the original trial judge had been replaced by a successor.

mally appointed the guardian ad litem by order of May 4, 1981.

On June 19, 1981, the attorney general filed an appearance and intervened as a matter of right, asserting a claim to the undistributed judgment under the Michigan Code of Escheats, MCL 567.11 et seq.; MSA 26.1053(1) et seq. Intervening plaintiff also served a formal claim upon the guardian ad litem. At the same time, the guardian ad litem filed with the court a report on his efforts to locate missing class members and a petition for fees and expenses incurred in performing his duties as guardian ad litem.

On February 8, 1982, the trial court issued an opinion denying plaintiffs' petition for more attorney fees. As to the guardian ad litem's petition for fees, the trial court delayed decision and instead took the request under advisement. In an apparent effort to bring this lawsuit to a close, the trial court further opined that this was a "spurious" class action and that unlocated class members would have to "opt in" prior to recovering their share of the judgment. The trial court further ordered notice of the instant class action and judgment to be published in all local newspapers, allowing unlocated class members until April 30, 1982, to submit to the court written claims for their portion of the judgment. After that date, recovery would be precluded. Intervening plaintiff's motion for rehearing was subsequently denied.

On March 16, 1982, seven years after the city had satisfied the judgment against it by depositing with the court the money owed, intervening plaintiff filed a supplemental claim on behalf of the unlocated class members as their lawful successor in interest. At the same time, the Wayne County Public Administrator, at the request of the State

Public Administrator, commenced related proceedings in probate court. On April 1, 1982, the probate court appointed the county public administrator as the administrator of the individual estates of the unlocated property owners involved in this class action. Prior to the April 30, 1982, cut-off date, the county public administrator filed a claim in this circuit court action on behalf of those individuals.

On May 4, 1982, intervening plaintiff filed a motion to remove the guardian ad litem on the ground that the intervening plaintiff and the county public administrator adequately represented the interests of the unlocated class members. Also sought was an order compelling the guardian ad litem to produce a legal memorandum prepared by his attorney on the applicability of the law of escheats to the unclaimed judgment fund. The trial court denied both requests by order of June 18, 1982, and this Court subsequently denied intervening plaintiff's application for leave to appeal from that order.

By order of January 21, 1985, the trial court finally disposed of all funds remaining in the judgment account. The court awarded $38,190 to plaintiffs' attorneys for fees incurred after March of 1975, and $78,320.68 to the guardian ad litem for fees and costs incurred on behalf of the unlocated class members. The court denied intervening plaintiff's claim to the undistributed judgment fund on the ground that the unlocated class members never submitted their written claims to the court and thus were never owners of the property which the state sought to escheat. The court instead ordered that the balance of the judgment fund be paid to the City of Detroit as the former owner.

Section 11 of the Michigan Code of Escheats,

MCL 567.11 *et seq.;* MSA 26.1053(1) *et seq.,* expressly provides that an unclaimed judgment is subject to escheat as follows:

> Whenever any officer of a court in this state, including federal courts, or any county officer is in possession of any money or other property collected or received pursuant to an order of court, and such officer is unable to distribute or pay out such money or property to the person or persons entitled thereto as prescribed by such order or decree of court, due to the failure of the distributee or distributees to claim the same, or for the reason that the whereabouts of such distributee or distributees cannot be ascertained and such inability shall continue for a period of 7 years from and after the receipt of such money or property by such officer, then it shall be the duty of such officer to report the same to the state board of escheats as abandoned property in conformity with the provisions of section 6 or 8 hereof. [MCL 567.21; MSA 26.1053(11).]

The parties here do not dispute that more than seven years have elapsed since the judgment was satisfied by the defendant and deposited with the trial court. The dispositive · issue is whether the unlocated class members are "entitled to" a portion of the unclaimed judgment fund, thus allowing the attorney general to proceed under the Code of Escheats.

In refusing to allow the remaining funds to escheat to the state, the trial court relied upon its earlier finding that the instant class action was spurious in nature and thus required class members to "opt in" by filing written claims with the court prior to April 30, 1982. The trial court reasoned that, because the unlocated class members never filed written claims, they were not entitled to any portion of the judgment fund and § 11 of the Code of Escheats thus did not apply.

We find it unnecessary to determine whether the trial court erred in classifying the instant action as spurious in nature. Whether or not there was a duty on the part of the unlocated class members to opt in, our review of the postjudgment proceedings in this case convinces us that the unlocated class members did, in fact, file effective written claims as to their portions of the undistributed judgment fund through the actions of the administrator of their individual estates, duly appointed by the probate court.

Pursuant to the Code of Escheats, the state public administrator, or someone acting at the administrator's behest, may institute proceedings in probate court to provide for the administration of abandoned property:

> The attorney general, or the state public administrator, may cause appropriate proceedings to be instituted in the probate court of the proper county of this state for the administration of the estate of any person who is the owner of abandoned property discovered as provided for in this act or of which he otherwise has knowledge. [MCL 567.33; MSA 6.1053(23).]

In this case, all of the unlocated class members were known by name from various records retained by the City of Detroit. The petition filed by the Wayne County Public Administrator in probate court named each of those individuals. The probate court appointment entered April 1, 1982, specifically granted the Wayne County Public Administrator the

> power and authority to administer and faithfully dispose of, according to law, all and singular the goods, chattels, rights, credits and estates of said persons identified as owners of abandoned prop-

erty, which shall at any time come into your possession, or to the possession of any other person for you and to ask, gather, levy, recover and receive all goods, chattels, rights, credits and estates whatsoever of said persons identified as owners of abandoned property, which to them did belong.

On the authority of that order, the county public administrator filed in this circuit court class action a written claim on behalf of the named but unlocated class members. Since the claim was filed prior to April 30, 1982, we conclude that the unlocated class members were "entitled to" their portions of the undistributed judgment fund and that the trial court erred in refusing to apply § 11 of the Code of Escheats in distributing those funds in January of 1985. This case is thus remanded for entry of an order consistent with this opinion.

Intervening plaintiff raises another argument, which because of our resolution of the foregoing issue does not require an extended discussion. The attorney general claims error in the trial court's refusal to compel production of a memorandum of law prepared by the attorney for the guardian ad litem prior to June of 1981. We hold that the trial court did not err in this regard. The memorandum of law is a work product of the attorney drafted for the specific purpose of legally advising his client. Since there is no evidence in this record to suggest that the guardian ad litem waived the attorney-client privilege of confidentiality, intervening plaintiff has no basis upon which to demand production of the memorandum. See *Kubiak v Hurr,* 143 Mich App 465, 472-473; 372 NW2d 341 (1985).

The only remaining question is whether the trial court possessed the authority to appoint a guardian ad litem on behalf of the unlocated class

members. Intervening plaintiff contends that there is no statute or court rule authorizing such an appointment and that the circuit court thus acted outside the scope of its authority in awarding to the guardian ad litem $78,320.68 in fees and expenses. Intervening plaintiff further submits that the appointment of a guardian ad litem in this case was tantamount to the appointment of a master or circuit court commissioner, contrary to the prohibitions imposed under the Michigan Constitution. Const 1963, art 6, §§ 5 and 26. Intervening plaintiff finally argues that even if the circuit court generally acted within the scope of its inherent authority in appointing a guardian ad litem, the appointment in this case was inappropriate because the interests of the unlocated class members were adequately represented by both the attorney general and the Wayne County Public Administrator.

We agree with intervening plaintiff that Michigan has no statute or court rule expressly authorizing the circuit court to appoint a guardian ad litem in the class action context. Former GCR 1963, 201.5(1), now MCR 2.201(E)(1), provided for the appointment of a guardian ad litem but only for purposes of representing minors and legal incompetents. See also MCL 700.401 *et seq.*; MSA 27.5401 *et seq.* and MCL 600.2045; MSA 27A.2045. Our independent review of the court rules and statutes, however, persuades us that the circuit court in this case did not exceed the scope of its authority when it appointed a guardian ad litem to represent the unlocated class members and their interests in the undistributed judgment fund.

It should be emphasized that the issue presented here concerns postjudgment proceedings only and our analysis is therefore limited to that context. When the trial court appointed a guardian ad

litem in 1981, the interests and rights of the class members, all of whom were identified by name, had already been judicially determined and a judgment entered on their behalf had already been deposited with the circuit court. At this point, the circuit court was left the administrative task of locating those class members who had not received their portion of the judgment in order to distribute the remaining funds.

The circuit courts of this state have the express statutory authority to order a judgment debtor to pay into the court all or part of a judgment to be distributed to the judgment creditor. See MCL 600.572; MSA 27A.572, MCL 600.573; MSA 27A.573, MCL 600.1465; MSA 27A.1465 and MCL 600.6137; MSA 27A.6137. Where a judgment has been deposited with the court, the court is vested with a wide latitude of discretion in managing the deposited funds. 23 Am Jur 2d, Deposits in Court, §§ 1, 15, pp 736, 744. Moreover, postjudgment proceedings to determine the rights to funds deposited with the court are equitable in nature. 26A CJS, Deposits in Court, § 9e, p 488. We conclude that the trial court in this case had the authority to exercise its discretion and take whatever steps were necessary to properly preserve, manage and distribute the funds contained in the judgment account so long as its actions were consistent with the primary goal of proper distribution.

At common law, the power to appoint a guardian rested with the courts of chancery and with American courts having equity powers. Even with the enactment of statutes making guardianships the primary function of probate court, courts in the same jurisdiction possessed of equitable powers have retained the power to appoint guardians unless expressly prohibited by statute. 39 Am Jur 2d, Guardian and Ward, § 24, pp 26-27. Interven-

ing plaintiff has not cited any statute barring circuit courts from exercising powers of equity in this traditional way and our independent review fails to disclose the same. Indeed, MCL 600.601; MSA 27A.601 provides:

> Circuit courts have the power and jurisdiction
> (1) possessed by courts of record at the common law, as altered by the constitution and laws of this state and the rules of the supreme court, and
> (2) possessed by courts and judges in chancery in England on March 1, 1847, as altered by the constitution and laws of this state and the rules of the supreme court, and
> (3) prescribed by rule of the supreme court.

In addition, the class action court rule in effect at the time the trial court appointed the guardian ad litem expressly provided the court with authority to "impose such terms as shall fairly and adequately protect the interests of the class or association in whose behalf the action is brought or defended." GCR 1963, 208.4. We thus conclude that the trial court in this case had inherent authority to appoint a guardian to protect the interests of the unlocated class members in post-judgment proceedings.

We further conclude that the appointment in this case did not constitute an abuse of the trial court's discretion even given the involvement of the county public administrator and the attorney general. Neither the attorney general nor the public administrator were involved in these proceedings at the time the guardian ad litem was appointed in May of 1981. The trial court proceeded with the appointment upon being informed that the plaintiffs' attorneys intended to move for an amendment of the attorney fee award, further depleting the amount of money available for distri-

bution to the unlocated class members. Additionally, it appears that, from 1975 to May of 1981, neither the plaintiffs' attorneys nor the City of Detroit had much success in locating members of the class and distributing to them their portion of the judgment. The trial court's express purpose in appointing a guardian ad litem was to locate whatever remaining class members could be located and make final disposition of this action. According to the trial court, the guardian ad litem was fairly successful in his location efforts, allowing the trial court to make significant further distributions of the fund. There is nothing on the record before us to suggest that either the attorney general or the county public administrator engaged in any efforts whatsoever to locate these missing class members. Given all of these circumstances, we cannot say that the trial court abused its discretion in proceeding as it did.

Nor are we persuaded that the trial court relied upon the guardian ad litem as a specially appointed judge or master or circuit court commissioner. The guardian ad litem at all times acted on behalf of the interests of the unlocated class members and the circuit court at all times viewed the guardian ad litem as the representative of an interested party.

Reversed in part, affirmed in part and remanded.