## ALEXANDER v CITY OF DETROIT

### Opinion of the Court

1. Constitutional Law—Statutes—Equal Protection—Classification.

   There are two tests to guide judicial scrutiny of suspect legislative enactments to determine whether or not a particular enactment violates equal protection for want of proper classification of subject individuals or entities: (1) Are the enactment's classifications based on natural distinguishing characteristics and do they bear a reasonable relationship to the object of the legislation and (2) Are all persons of the same class included and affected alike or are immunities or privileges extended to an arbitrary or unreasonable class while denied to others of like kind?

2. Municipal Corporations—Refuse Collection Ordinance—Multiple Dwellings—Constitutional Law—Equal Protection—Classification.

   Inclusion of multiple dwellings with more than four units in the

---

References for Points in Headnotes

[1] 16 Am Jur 2d, Constitutional Law §§ 335, 485–493.

[2, 4, 5, 7] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 461.

Validity of statutory or municipal regulations as to garbage, 135 ALR 1305.

Regulation and licensing of private garbage or rubbish removal service, 83 ALR2d 799.

[3] 20 Am Jur 2d, Courts §§ 82–86.

Power of court to prescribe rules of pleading, practice, or procedure, 158 ALR 715.

[6] 22 Am Jur 2d, Damages § 249 et seq.

Liability for punitive or exemplary damages or statutory penalty of one intentionally or negligently starting fire which caused an injury to person or property, 104 ALR 412.

Punitive or exemplary damages for assault, 123 ALR 1122.

Punitive or exemplary damages in action by spouse for alienation of affections or criminal conversation, 31 ALR2d 713.

Right to punitive or exemplary damages in action for personal injury or death caused by operation of automobile, 62 ALR2d 813.

fee-paying "commercial waste" category of a city's refuse collection ordinance while multiple dwellings with four or less units and condominiums and cooperatives were excluded was a constitutionally improper classification violative of the state and Federal guarantees of equal protection where there was no "natural distinguishing characteristic" adduced at trial bearing a "reasonable relationship to the object of the legislation" and no demonstration was made by the city of the "natural distinguishing characteristic" of increased expense for collection of refuse at properties included in the fee-generating portion of the ordinance as compared to the like class of excluded properties (US Const, art XIV, § 1; Const 1963, art 1, § 1).

3. APPEAL AND ERROR—FINDINGS OF FACT—COURT RULES.

Findings of fact by a court will not be set aside by appellate courts unless found to be clearly erroneous (GCR 1963, 517).

4. MUNICIPAL CORPORATIONS—REFUSE COLLECTION ORDINANCE—MULTIPLE DWELLINGS—CONSTITUTIONAL LAW—EQUAL PROTECTION.

A refuse collection ordinance attempted a distinction without a difference which is arbitrary, unreasonable and violative of the equal protection clauses of the Federal and state constitutions by declaring that domestic waste in multiple dwellings of more than four units is commercial waste which is a sudden transformation by name only (US Const, art XIV, § 1; Const 1963, art 1, § 1).

5. ESTOPPEL—PAYMENT UNDER PROTEST—MUNICIPAL CORPORATIONS—REFUSE COLLECTION ORDINANCE—COMPLIANCE—CONSTITUTIONAL LAW—CLASSIFICATION.

Parties who brought suit alleging that a city's refuse collection ordinance was unconstitutional were not estopped from complaining about the ordinance although they chose to comply with its terms where the parties have stipulated and the trial court found that all payments made under and by reason of the ordinance were made under protest and were involuntary in every respect and because the city cannot decide to provide a service and then provide that service in a constitutionally discriminatory manner; the city could not make the parties the victim of unconstitutional and unfair classification and then turn around and claim that the parties were estopped from complaining because they continued to make payments while fighting their case.

6. DAMAGES—EXEMPLARY DAMAGES—EVIDENCE—APPEAL AND ERROR.

A trial court's conclusion that exemplary damages were not

warranted will not be disturbed on appeal where there is evidence in the record supporting the finding of lack of vindictive, wilful, wanton, or malicious conduct by the defendant, because in the absence of one of these forms of intentional conduct, no exemplary damages are in order.

CONCURRING OPINION

M. S. COLEMAN, J.

7. MUNICIPAL CORPORATIONS—REFUSE COLLECTION ORDINANCE—CONSTITUTIONAL LAW—EQUAL PROTECTION—CLASSIFICATION.

*City's refuse collection ordinance violates the guarantees of equal protection of the laws; the findings of fact made by the trial judge conclusively demonstrate that the classification is purely arbitrary, bearing no rational relationship to a permissible statutory objective.*

See headnotes 5 and 6.

Appeal from Court of Appeals, Division 1, Quinn, P. J., and V. J. Brennan and O'Hara, JJ., reversing Wayne, George T. Martin, J. Submitted April 4, 1974. (Nos. 9–10 April Term 1974, Docket No. 54,714.) Decided June 25, 1974. Rehearing denied August 2, 1974.

45 Mich App 7 reversed.

Complaint by Shirley Alexander for herself and as a member of the class of all taxpayers in the City of Detroit who own multiple dwellings of more than four units against the City of Detroit and certain of its officials to have a refuse collection ordinance declared unconstitutional, to restrain enforcement thereof, for repayment of amounts collected thereunder and for those amounts to be placed in a fund. Practical Home Builders, Inc. and others permitted to intervene as plaintiffs. All refuse charges collected ordered escrowed. Judgment for plaintiffs. Defendant City of Detroit appealed to the Court of Appeals. Plaintiffs cross appealed. Reversed, the class action dis-

missed, and the order segregating the fees vacated. Plaintiffs appeal. Reversed and remanded to trial court for further proceedings.

*Katz, Victor & Yolles,* for plaintiffs.

*Barris, Sott, Denn & Driker,* for intervening plaintiffs.

*Michael M. Glusac,* Corporation Counsel, and *John F. Hathaway* and *Maureen P. Reilly,* Assistants Corporation Counsel, for defendants.

WILLIAMS, J. This case concerns a constitutional attack on a Detroit refuse collection ordinance which is no longer in effect. Plaintiffs brought suit to recover money spent for refuse collection during the effective period of this ordinance.

While a number of constitutional deficiencies are advanced by plaintiffs, we need only deal with a single dispositive constitutional issue, namely:

(1) Was Detroit ordinance 442-G violative of equal protection in that waste from certain apartment buildings with more than four units was improperly classed as "commercial" and subject to charges for refuse services provided free to others in a like class?

We answer this question in the affirmative.

Two additional nonconstitutional questions are advanced by the parties:

(2) Are plaintiffs estopped from complaining about Detroit ordinance 442-G as they "voluntarily" chose to comply with its terms?

(3) Did the trial judge err in not awarding exemplary damages?

We answer both of these nonconstitutional questions in the negative.

# I —FACTS

On June 26, 1969, the City of Detroit adopted ordinance 442-G which, *inter alia,* amended the existing Detroit refuse collection ordinance by adding waste produced by "multiple dwellings of more than four units" to the classification "commercial waste" (§ 25-1-1). Specifically exempted from this new "commercial waste" category were "condominiums and cooperatives" (§ 25-1-1). 442-G left unchanged the existing collection fee applicable only to commercial waste in excess of 20 bushels per month (§ 25-1-30). 442-G further provided for Common Council discretionary reduction or waiver of fees "upon petition by any non-profit or limited dividend federally subsidized housing development for low to moderate income families, or by a bona-fide non-profit, charitable or eleemosynary organization * * * ". (§ 25-1-29.)

Plaintiffs, the class of owners of newly affected multiple dwellings, filed suit on July 10, 1969, alleging unconstitutionality. Shortly before trial, 442-G was repealed in its entirety. However, as of that time, due to 442-G's implementation, approximately $1,600,000 in refuse charges had been paid to the city and an undetermined amount to private contractors. During the pendency of the proceedings, the trial judge, Wayne County Circuit Judge George T. Martin, fortunately ordered all refuse charges collected under the new ordinance escrowed. Approximately $1,170,000 remains in escrow pursuant to that order.

On August 12, 1971, the trial court found for plaintiffs on equal protection grounds but did not allow exemplary damages nor liability of the named individuals as defendants.[1] Both sides ap-

---

[1] The individuals named as defendants held the Detroit city offices

pealed. The Court of Appeals reversed the trial court's finding of unconstitutionality. 45 Mich App 7; 205 NW2d 819 (1973). Proceedings were stayed by the trial court pending appeal to our Court. We granted leave on July 13, 1973. 389 Mich 816 (1973).

## II —IMPROPER CLASSIFICATION

The question whether or not a particular legislative enactment violates equal protection for want of proper classification of subject individuals or entities is not susceptible to facile determination. Voluminous case law exists on the subject of the appropriate test to be utilized in such an analysis. In three relatively recent majority opinions of this Court, Chief Justice (then Justice) T. M. KAV-ANAGH pulled together the threads of past opinions of our Court and the United States Supreme Court, essentially elucidating two tests to guide judicial scrutiny of suspect enactments:[2]

(1) Are the enactment's classifications based on natural distinguishing characteristics and do they bear a reasonable relationship to the object of the legislation? *Fox v Employment Security Commission,* 379 Mich 579, 588; 153 NW2d 644, 647 (1967); *Beauty Built Construction Corp v City of Warren,* 375 Mich 229, 235; 134 NW2d 214, 218 (1965); *Palmer Park Theatre Co v High-*

of Commissioner of Public Works, Commissioner of Health, Commissioner of Police, Commissioner of Buildings & Safety Engineering, and City of Detroit Corporation Counsel.

[2] Without extended discussion, we most recently utilized these same two tests in *Reich v State Highway Dept,* 386 Mich 617, 622–623; 194 NW2d 700, 702 (1972); *Browning v Michigan Department of Corrections,* 385 Mich 179, 189; 188 NW2d 552, 556 (1971); and *Baldwin v North Shore Estates Association,* 384 Mich 42, 50–52; 179 NW2d 398, 402–403 (1970).

*land Park,* 362 Mich 326, 346; 106 NW2d 845, 855–856 (1961).

(2) Are all persons of the same class included and affected alike or are immunities or privileges extended to an arbitrary or unreasonable class while denied to others of like kind? *Fox v Employment Securities Commission,* 379 Mich 579, 589; 153 NW2d 644, 647–648 (1967); *Beauty Built Construction Corp v City of Warren,* 375 Mich 229, 236; 134 NW2d 214, 218 (1965); *Palmer Park Theatre Co v Highland Park,* 362 Mich 326, 347–348; 106 NW2d 845, 855–856 (1961).

Applied to the instant factual situation, we hold that inclusion of multiple dwellings with more than four units in the fee-paying "commercial waste" category while multiple dwellings with four or less units and condominiums and cooperatives were excluded, was a constitutionally improper classification violative of the state and Federal guarantees of equal protection. Const 1963, art 1, § 1; US Const, art XIV, § 1.

In reaching this conclusion, we are heavily influenced by the careful findings of fact of the able trial judge, George Martin, in this cause. Findings of fact will not be set aside by appellate courts unless found to be clearly erroneous. GCR 1963, 517. Analysis of the lengthy trial record strongly supports the accuracy of Judge Martin's factual conclusions. The following findings are of significant import on the issue of improper classification:

"There was no difference in the collection of refuse from condominiums and cooperatives on the one hand, and multiple dwellings of 5 units or more chargeable under Ordinance 442-G on the other hand. The City of Detroit did not incur any greater expense in collecting

refuse from multiple dwellings with 5 or more units than from condominiums or cooperatives.

"One of the reasons claimed for exempting coopera-tives and condominiums was because the ownership differed from the conventional, i.e. landlord-tenant type of multiple dwelling. One DPW Commissioner who proposed exemption of condominiums and cooperatives in Ordinance 442-G did not know that units of condo-miniums and cooperatives could be rented at a profit. In an FHA insured condominium project, no more than 80% of the units need be sold as condominiums and the developer of the condominiums may and often does rent the remaining 20% of the units as an income producing enterprise.

"None of the officials of the City of Detroit appears to have made a study of the extent of garbage disposers and multiple dwellings, or the scientific analysis and study of the amount of refuse generated by single and multiple dwellings of various sizes, locations, and occu-pancy.

"Although the City of Detroit claimed that a basis for exempting dwellings with 4 or less units under Ordi-nance 442-G was their lack of profit potential, it made no survey of such dwellings to ascertain if they were income producing or designed to produce income.

"In enacting Ordinance 442-G, the City of Detroit did not consider the character of the waste generated in granting exemptions to dwellings with 4 units or less. Four family dwellings were intended to achieve a profit and were bought and sold on that basis.

"Multiple dwellings with 4 or less units were in direct competition for tenants with multiple dwellings chargeable under Ordinance 442-G, and by reason of such charge, multiple dwellings with 5 or more units were placed at a competitive disadvantage.

"Prior to enactment of Ordinance 442-G, the cost of refuse collection and disposal from multiple dwellings was paid out of the general fund of the City of Detroit.

"An owner of a multiple dwelling with more than 4 units in effect paid two refuse collections and disposal fees, to-wit:

"a) The fee chargeable under Ordinance 442-G;

"b) Some portion (either about 4% or about 22%) of his City of Detroit tax bill.

"The City of Detroit did not incur any greater expense per unit in collecting and disposing of refuse from dwellings with more than 5 units than it did in collecting and disposing of refuse from dwellings with 4 or less units. The same is true of the non-profit, charitable or educational institutions and subsidized housing which were not charged by the City of Detroit.

"During the time Ordinance 442-G was in effect, there were approximately:

"a) 300,000 single family dwellings in the City of Detroit;

"b) 52,000 two-family dwellings in the City of Detroit;

"c) 8,000 three- and four-family dwellings in City of Detroit;

"d) 4,420 multiple dwellings with more than four units which were not occupied as cooperatives or condominiums located in the City of Detroit."

These factual findings, which we adopt, well-depict 442-G's constitutional infirmity. No "natural distinguishing characteristic" was adduced at trial bearing a "reasonable relationship to the object of the legislation". The City of Detroit, for example, in claiming the object of securing refuse collection fees only from profit-making properties, failed to show that excluded properties, *e.g.,* multiple dwellings with four or less units and condominiums, were not profit-making. As well, no demonstration was made by the city of the "natural distinguishing characteristic" of increased expense for collection of refuse at properties included in the fee-generating portion of the ordinance as compared to the like class of excluded properties.

Thus the class of multiple dwellings with any number of rental units and the class of profit-making properties, including condominiums and cooperatives, were not treated similarly under 442-G. The privilege of immunity from the sizeable

collection fees involved under this ordinance was granted to one subclass of properties while the plaintiffs' subclass was arbitrarily denied such benefit. We concur in Judge Martin's legal conclusion based upon these facts:

"For Ordinance 442-G to declare that 'Domestic waste' in multiple dwellings of more than 4 units is 'Commercial waste', is to declare a sudden transformation by name only. *Ordinance 442-G attempted a distinction without a difference* which is arbitrary, unreasonable, and violative of the equal protection clauses of the Federal and State Constitutions." (Emphasis added.)

Thus, Detroit City Ordinance 442-G is found to be unconstitutional on equal protection grounds by reason of improper classification of plaintiffs' subject properties. The Court of Appeals is reversed on this score.[3]

---

[3] We would be remiss in our appellate and supervisory duties if we did not make note at this point of the peculiar nature of the Court of Appeals opinion in this cause. The Court of Appeals disposed of the issue of improper classification, and all of the issues in this case, without direct citation of authorities. 45 Mich App 7; 205 NW2d 819 (1973). Instead, the Court adopted a unique approach:

"It is to be noted that we have included no excerpts from the record nor citations from case precedent in this opinion. It is intentional. As our case load constantly increases, so perforce does the number of opinions. Brevity becomes more and more essential. In a case such as this which involves settled principles, lengthy excerpts from other cases is of little benefit to the trial bench or the profession. The same is true of quotations from the trial record.

"For the benefit of those who may want research assistance we append a list of cases from the excellent briefs of both parties and others from our own research." 45 Mich App 7, 14–15.

We today specifically disapprove of this appellate practice. The appellate process of disseminating written opinions is not intended to provide the Bench, the Bar, and the parties with bare conclusory analysis and a list of abstract principles of law. The very point of appellate opinions, rather than summary orders, is the explanatory application of abstract principles to particular fact situations. In the instant case, this Court and the parties to this litigation had no way of ascertaining which, if any, of the citations in the appendix were intended to support the Court's conclusions with regard to improper classification. We recognize the tremendous burdens of the Court of Appeals' ever-increasing docket. Nonetheless, we will not lend our imprimatur to the use of appellate opinions which do not hew to the

### III —INVOLUNTARINESS OF PLAINTIFFS' COMPLIANCE

The Court of Appeals held that appellants were estopped from complaining about 442-G as they voluntarily chose to comply with its terms:

"In the case at bar plaintiffs had the options of private contract, private disposition, or the service offered by the city at the price established by the ordinance. Plaintiffs could not possibly be the victims of alleged discrimination in classification or discriminatory enforcement unless they opted for the offered municipal service. Having made their choice they cannot be heard to complain." 45 Mich App 7, 12.

We must disagree.

First, the parties have stipulated and the trial court found that all payments made under and by reason of 442-G "were made under protest and were involuntary in every respect". Within three weeks of passage of 442-G, plaintiffs notified the city of the involuntary, under protest, nature of all payments made by the plaintiff class.

Second, and most important, the city cannot decide to provide a service and then provide that service in a constitutionally discriminatory manner. We have strongly rejected this "take it or leave it" argument in two recent cases. *Alan v Wayne County,* 388 Mich 210, 346–348; 200 NW2d 628, 694–695 (1972); *Viculin v Department of Civil Service,* 386 Mich 375, 386–387; 192 NW2d 449, 455–456 (1971). We strongly reject this argument again today. As we stressed in *Alan:*

"The principles *[sic]* of the cases * * * is simply that

established practice in Michigan of informing the parties, the Bench, and the Bar of the precise grounds for decision of the legal questions in controversy.

a citizen, merely because he has no constitutional right to something, cannot be forced to take that something burdened with whatever classification and unfair procedures the Legislature attaches." 388 Mich 210, 347.

The city could not make plaintiffs the victim of unconstitutional and unfair classification and then turn around and claim that plaintiffs are estopped from complaining because they continued to make payments while fighting their case. The Court of Appeals is reversed on this point.

## IV —EXEMPLARY DAMAGES

One final issue remains to be considered. During the course of the trial of this matter, plaintiffs moved to amend their complaint to add a prayer for exemplary damages claiming that testimony during the course of the trial showed the city's alleged discriminatory action in passage and administration of 442-G was *intentionally* motivated. The trial court granted this motion but in its findings of fact and conclusions of law found no exemplary damages to be in order:

"This court is not convinced that defendants indulged in acts of such a flagrant and gross nature as to justify the recovery of exemplary or punitive damages by plaintiffs. The testimony shows that from 1967 to 1969 there was discussion and experimentation in the drafting of a refuse ordinance to obtain extra revenue for Detroit. The testimony shows that city officials were of different minds and beset by conflicting opinions as to the practicality and justice of provisions of an amended refuse ordinance.

"The testimony shows also that the city decided to make profit making businesses pay for their rubbish collections. Actually, the city had insufficient data for a sweeping classification. The city made a mistake in the classifications set forth in Ordinance 442-G. But the

mistake was not of the vindictive, wilfull *[sic]*, wanton, malicious nature required for an award of punitive damages.

"Considering the testimony with its showing of the complexity of administering a city government, and the pressures, exigencies, and pull-and-tug of conflicting forces in the enactment of this city ordinance, exemplary or punitive damages are not awarded in this case."

Upon review of the testimony and numerous exhibits introduced in the trial court, we note that much strong evidence was adduced at trial pointing to the city's knowledge of 442-G's discriminatory classification and application. Most damning was the presence in the record of a letter dated May 9, 1968, from Harold Hood, Assistant Corporation Counsel to Robert Toohey, Commissioner of Public Works. In this letter, the legal advisor of the city communicated its conclusion that certain fee exemptions, as part of the existing administrative practice, were without basis in law. Subsequent passage of 442-G on June 26, 1969, did not affect this conclusion. Nonetheless, the exemptions ruled discriminatory by the city's own counsel remained in administrative effect during the operative period of 442-G.[4]

Without question, the action of the City of Detroit, ignoring the conclusion of its own legal counsel that its administrative practice was unlawful, was far from commendable. However, we are confident that the trial judge in his very careful analysis of the case was aware of this but felt nonetheless that exemplary damages were not warranted. Consequently, we will not, even consid-

---

[4] We recognize that this letter points to the issue of discriminatory application of 442-G, an issue we specifically do not reach today. However, reference to this letter is made in this part of our opinion as an indication of the knowledge and attitude of the City of Detroit administration relevant to the issue of exemplary damages.

ering the above, disturb the trial court's conclusion on the issue of exemplary damages. As noted in Section II of this opinion, *supra,* the trial court's findings of fact will not be set aside unless clearly erroneous. GCR 1963, 517. There is evidence in the record supporting this finding of lack of "vindictive, wilfull *[sic],* wanton, [or] malicious" conduct. In the absence of one of these forms of intentional conduct, no exemplary damages are in order. 9 Michigan Law & Practice, Damages, § 5, p 16. The Court of Appeals, because of its disposition of this matter, did not consider this issue. We affirm the trial court denial of exemplary damages.

## V —CONCLUSION

For the reasons outlined in Section II, *supra,* we hold Detroit City Ordinance 442-G to be unconstitutional on equal protection grounds due to its improper discriminatory classification of the plaintiff class.

·We further hold for the reasons outlined in Sections III and IV, *supra,* that plaintiffs are not estopped from challenging this ordinance by the act of making payments to the city or to private contractors by reason of the operation of 442-G, nor do we upset the trial court's denial of exemplary damages.

The Court of Appeals is reversed. The trial court judgment is reinstated. This cause is remanded for further proceedings not inconsistent with this opinion.

No costs, a public question being involved.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, SWAINSON, LEVIN, and J. W. FITZGERALD, JJ., concurred with WILLIAMS, J.

M. S. COLEMAN, J. *(concurring)*. I agree that the ordinance violates the guarantees of equal protection of the laws. The findings of fact made by the trial judge conclusively demonstrate that the classification is purely arbitrary, bearing no rational relationship to a permissible statutory objective. See *Reed v Reed,* 404 US 71; 92 S Ct 251; 30 L Ed 2d 225 (1971) and *Village of Belle Terre v Boraas,* 416 US 1; 94 S Ct 1536; 39 L Ed 2d 797 (1974).

As to the questions of estoppel and exemplary damages, I concur in Justice WILLIAMS' analysis. I agree that the Court of Appeals should be reversed and the trial court's judgment reinstated.