77TH DISTRICT JUDGE v STATE OF MICHIGAN

Docket No. 95138. Submitted December 2, 1987, at Lansing. Decided March 8, 1989.

George Van Kula, judge of the 77th District Court, brought an action in the Court of Claims against the State of Michigan, claiming a violation of his equal protection rights under the federal and state constitutions arising from the treatment accorded by statute to judges of the 36th District Court with regard to compensation and pension contributions and benefits, which treatment is more favorable than that accorded to judges of the rest of the judicial districts in the state. The Court of Claims, James T. Kallman, J., declared the statutory disparities unconstitutional, awarded plaintiff damages, and ordered that plaintiff's compensation, retirement contribution obligations and retirement benefits be fixed at levels equivalent to that of a 36th District judge. Defendant appealed.

The Court of Appeals *held:*

1. The statutory disparity in treatment as to compensation, retirement funding obligations, and retirement benefits violates equal protection. The preferred treatment given to judges of the 36th District Court is arbitrary and unreasonable in the absence of any reason explaining why the duties, responsibilities and circumstances of service obtaining in the 36th District Court provide the basis for any reasonable justification of the more favorable treatment.

2. Damages are an inappropriate redress for the equal protection violation established in this case because: (1) there is no precedential authority for a damages remedy for the type of constitutional violation at issue here; (2) deterrence of tortious conduct is not at issue in this case; (3) issues of judicial compensation would appear to be uniquely directed to the policy-making expertise of the Legislature; and (4) under Const 1963, art 1, § 2, it is the Legislature which is empowered to implement enforcement mechanisms for equal protection. Furthermore, legislative immunity under the common law and

REFERENCES
Am Jur 2d, Appeal and Error §§ 11 *et seq.,* 119; Courts §§ 98, 106.

governmental immunity from tort liability present insuperable obstacles to plaintiff's suit for damages.

3. The Court of Claims is without jurisdiction to grant injunctive or declaratory relief in this case. The Court of Claims has exclusive jurisdiction to hear and determine all claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the state and has jurisdiction concurrent with the circuit court over a claim for equitable relief when such relief is ancillary to a claim within its exclusive jurisdiction. Also, declaratory judgment is appropriate in the Court of Claims only if the underlying dispute or controversy is of a nature lending itself to an eventual remedy in money damages. Here, as explained earlier, damages are an inappropriate remedy. Because the Court of Claims did not have jurisdiction to grant any relief for plaintiff's equal protection claim, this case is dismissed.

Dismissed.

1. COURTS — COURT OF CLAIMS — SUBJECT-MATTER JURISDICTION.

The Court of Claims has exclusive jurisdiction to hear and determine all claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the state and any of its departments, commissions, boards, institutions, arms, or agencies, and has jurisdiction concurrent with the circuit court over any demand for equitable or declaratory relief ancillary to a claim within its exclusive jurisdiction (MCL 600.6419, 600.6419a; MSA 27A.6419, 27A.6419a).

2. COURTS — COURT OF CLAIMS — DECLARATORY JUDGMENTS.

A declaratory judgment is appropriate in the Court of Claims only if the underlying dispute or controversy is of a nature lending itself to an eventual remedy in money damages against the state.

3. COURTS — COURT OF CLAIMS.

The Court of Claims is without jurisdiction to grant injunctive or declaratory relief in a suit brought against the state for an alleged violation of a district judge's rights to equal protection under the laws, as secured by the federal and state constitutions, arising from the treatment accorded by statute to judges of the 36th District Court with regard to compensation and pension contributions and benefits, which treatment is more favorable than that accorded by statute to judges of the rest of the judicial districts in the state (MCL 38.802[m], 38.814a, 38.814c, 38.820[2], 600.8202; MSA 27.125[2][m], 27.125[14a], 27.125[14c], 27.125[20][2], 27A.8202).

*George Van Kula,* in propria persona.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Arthur E. D'Hondt* and *Michael A. Nickerson,* Assistant Attorneys General, for defendant.

Amicus Curiae:

*Farhat, Story & Krause, P.C.* (by *Max R. Hoffman, Jr.*), for Michigan District Judges' Association.

Before: HOLBROOK, JR., P.J., and GILLIS and R. L. TAHVONEN,* JJ.

HOLBROOK, JR., P.J. This appeal raises the question of the constitutionality of those classifications in the statutory framework for compensation of district court judges that cause more favorable treatment in compensation and benefits to be received by 36th District judges than by the other judges of this state's district court. Plaintiff, the 77th District Judge, argued in the Court of Claims that his rights to equal protection under both the United States and Michigan Constitutions, see US Const, Am IV, § 1; Const 1963, art 1, § 2, were violated because the distinction made between the two groups of district judges resulted in 36th District judges receiving more favorable salary terms, lesser contribution obligations to the judges' retirement system, and more generous retirement benefits than their counterparts in other districts. The Court of Claims agreed with plaintiff, declared the offending statutory disparities unconstitutional, awarded plaintiff damages, and ordered that plaintiff's compensation, retirement contribu-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tion obligations, and retirement benefits be fixed at levels equivalent to that of a 36th District judge beginning January 1, 1987. Defendant State of Michigan appeals as of right. The Michigan District Judges' Association, acting as amicus curiae, joins with plaintiff in urging this Court to affirm the Court of Claims. Although we agree that the statutory scheme is violative of equal protection, we conclude that damages are inappropriate as a matter of law and that the Court of Claims lacked jurisdiction to afford plaintiff any other form of relief.

I

The facts demonstrating disparate treatment between 36th District judges and other district judges are stipulated. The disparate treatment is statutorily effected in three asserted respects. First, in regard to the salary disparity, all district judges receive from the state a base salary equal to ninety percent of the base salary payable by the state to a circuit judge. MCL 600.8202(1); MSA 27A.8202(1). This base salary is supplemented by an additional salary pursuant to MCL 600.8202(2); MSA 27A.8202(2), which provides in pertinent part:

> In addition to the salary received from the state, a district judge may receive from a district control unit in which the judge regularly holds court an additional salary as determined by the governing legislative body of the district control unit. Supplemental salaries paid by a district control unit shall be uniform as to all judges who regularly hold court in the district control unit. In the thirty-sixth district each district judge shall receive an additional salary which, when added to the annual salary paid by the state under subsection (1), equals 88% of the annual salary of a justice of the

supreme court. The total annual additional salary paid to a district court judge by the district control units in which the judge regularly holds court shall not cause the district judge's total annual salary received from state and district control unit funds to exceed 88% of the annual salary of a justice of the supreme court.

The same statute further provides that the state shall reimburse the district control unit for "a portion of that additional salary in an amount provided by law." MCL 600.8202(9); MSA 27A.8202(9).

The claimed disparity in salaries stems from the mandate in the above statute that the 36th District judges' aggregate of base and supplemental salary must equal the statutory ceiling of eighty-eight percent of the salary of a Supreme Court justice, but that the other district judges receive an amount somewhere between the state-provided ninety percent of the base salary of a circuit judge and the statutory ceiling, depending on discretionary determinations of the district control unit (as to the amount of the supplemental salary) and the Legislature (as to the appropriation of a reimbursement to the district control unit). Thus, plaintiff judge received a salary of $53,860 in 1985, but each 36th District judge received $66,950 for the same year.

Second, the statutory provisions for the judges' retirement system creates a disparity in its imposition of the levels of funding obligations imposed upon the member judges. All district court judges, except for 36th District judges, are required to contribute 3.5 percent of their state-paid base salary to the annuity savings fund. MCL 38.820(2)(a); MSA 27.125(20)(2)(a). However, a judge may choose to expand the amount of his eventual retirement benefits by exercising one or both of

two options to convert part of the state salary standardization payment made by the state to the district control unit to subsidize the judge's additional salary component. The converted amount is included as part of the "final salary" used as the basis for computation of benefits. The two options available to the district judge are (1) to convert $2,250 of the annual state salary standardization payment, MCL 38.814a; MSA 27.125(14a), and (2) to convert that remaining portion of the annual state salary standardization payment which, when added to the $2,250 from the first option, will not exceed forty percent of the difference between the judge's total salary (aggregate of state-paid base salary and additional salary) and his base salary, MCL 38.814c; MSA 27.125(14c). If the judge exercises only the first option, his annual contribution to the fund is 3.5 percent of the sum of his base salary and the converted $2,250. MCL 38.820(2)(a) and (b); MSA 27.125(20)(2)(a) and (b). If both options are exercised, then the judge's annual funding obligation is seven percent of the combined base salary and the converted portions of the state salary standardization payment. MCL 38.820(2)(c); MSA 27.125(20)(2)(c).

The foregoing does not apply to 36th District judges, and a different, more favorable funding obligation inures to their benefit. Their annual contribution is 3.5 percent of their total salary (which, as previously noted, is fixed at eighty-eight percent of the salary of a Supreme Court justice). The conversion options are expressly made inapplicable to 36th District judges, who, as it turns out, do not need them because their eventual benefits under the judges' retirement system are more favorable than the benefits of the other district judges, including those who exercise both conversion options. MCL 38.814a(3); MSA 27.125(14a)(3),

MCL 38.814c(3); MSA 27.125(14c)(3). Thus, the statutory scheme creates a disparity by its imposition of a 3.5 percent funding requirement applied to a 36th District judge's total salary, as compared to the seven percent funding requirement applied to those other district judges who exercise both conversion options. By way of illustration, plaintiff's contribution for 1985, computed as seven percent of the sum of his $38,460 base salary plus $11,965 converted salary, was $3,529.75. The contribution of a 36th District judge, computed as 3.5 percent of an aggregate salary of $66,950, was $2,343.25.

Third, 36th District judges receive more generous benefits from the system upon their retirement. In the usual case, a retiring member receives a fixed percentage of his "final salary" as his annuity benefit. MCL 38.814; MSA 27.125(14). "Final salary" is defined more beneficially for 36th District judges vis-à-vis other judges:

> "Final salary" means the annual rate of salary paid by the state at the time of his or her retirement to a judge, except a judge of the district court in the thirty-sixth district who does not participate in the retirement system established by the city of Detroit, or as otherwise provided in this subdivision. . . . In addition, "final salary" shall include the $2,250.00 of the state salary standardization payment if converted pursuant to section 14a,[1] and the balance of the state salary standardization payment if converted pursuant to section 14c.[2] For each judge of the district court in the thirty-sixth district who does not participate in the retirement system established by the city of Detroit, 'final salary' means the total annual rate of salary paid by the state and the district control unit of the thirty-sixth district to the judge at the

---

[1] MCL 38.814a; MSA 27.125(14a).
[2] MCL 38.814c; MSA 27.125(14c).

time of his or her retirement. [MCL 38.802(m); MSA 27.125(2)(m).]

Thus, the final salary of a 36th District judge for purposes of retirement benefits is equivalent to his aggregate salary of eighty-eight percent of the salary of a Supreme Court justice, but benefits of the other district judges are computed with reference to a lesser amount comprised of the state-paid base salary plus converted amounts of the state salary standardization payment. The result in the instant case would be an annual retirement benefit of $33,475 for a 36th District judge, assuming his retirement after twelve years of continuous service, his attainment of age sixty at the time of retirement, and his nonparticipation in the retirement system established by the City of Detroit. Under the same set of assumptions, a district judge serving in plaintiff's 77th District Court would receive a retirement benefit of $25,212.50 per year.

To summarize, the net effect of the statutes described above is that district judges other than 36th District judges are not per se entitled to the same salary level as their 36th District counterparts, often pay higher contributions to the retirement system, and receive lesser benefits upon retirement. Because, for purposes of equal protection analysis, we discern no analytical differences pertaining to the three compensation-related categories of disparate treatment, we analyze all three together and without differentiation.

II

We must initially decide the standard of review controlling this equal protection claim. The strict scrutiny ordinarily associated with review of clas-

sifications implicating fundamental rights or an acknowledged suspect class has no application in this case. The parties seem to agree that the appropriate level of scrutiny is set forth in the two-pronged test of *Alexander v Detroit,* 392 Mich 30, 35-36; 219 NW2d 41 (1974):

> (1) Are the enactment's classifications based on natural distinguishing characteristics and do they bear a reasonable relationship to the object of the legislation?
> (2) Are all persons of the same class included and affected alike or are immunities or privileges extended to an arbitrary or unreasonable class while denied to others of like kind? [Citations omitted.]

See also *Hughes v Judges' Retirement Bd,* 407 Mich 75, 92-95; 282 NW2d 160 (1979).

In *Manistee Bank & Trust Co v McGowan,* 394 Mich 655; 232 NW2d 636 (1975), it was held that the statutory privilege shielding an owner or driver from liability for injuries sustained by a guest passenger violated equal protection. In so deciding, the Court further explained the test articulated in *Alexander*:

> Whatever label is attached to the analysis . . . "the governing rule is one of reason: The Equal Protection Clause, like the Due Process Clause, is a guaranty that controls the reasonableness of governmental action." The classification must be a reasonable one, and it must bear a reasonable relation to the object of the legislation.
> What is reasonable is in each instance a matter of judgment. In the final analysis, it is a value judgment and should be recognized as such. "Whether the court *upholds or invalidates* a statute, the court is making policy, making value judgments." (Emphasis supplied.)

So, too, is the choice of test a matter of judgment. In my judgment, at least where the challenged statute *carves out a discrete exception* to a general rule and the statutory exception is no longer experimental, the substantial-relation-to-the-object test should be applied. [394 Mich 671.]

We deem the test stated in *Alexander* and further explained in *Manistee Bank & Trust Co* to be controlling.[3]

---

[3] We note in passing the distinction drawn in many equal protection cases between the test utilized in *Alexander* (the so-called means scrutiny test) and the traditional rational basis test. The former imposes a somewhat more searching degree of judicial scrutiny upon the process of reviewing the governmental classification in question. *Manistee Bank & Trust Co v McGowan, supra,* pp 668-672. More specifically, in contradistinction to the test quoted from *Alexander,* the traditional rational basis test puts judicial inquiry at an end when some conceivable state of facts, either known or which could reasonably be assumed, demonstrates that the legislative judgment reflected in the classification is rationally (not substantially) related to a legitimate governmental interest. *Shavers v Attorney General,* 402 Mich 554, 613-614; 267 NW2d 72 (1978).

The criteria to be applied to the determination of which standard is applicable is somewhat unclear. In *McAvoy v H B Sherman Co,* 401 Mich 419, 451-454; 258 NW2d 414 (1977), the Court quoted as controlling the same portion of *Alexander* reproduced in this opinion and then purported to apply traditional equal protection analysis, leaving the reader with the impression that any analytical differences between the two standards had been judicially vaporized. See also *Nelson v Dep't of Social Services,* 111 Mich App 373; 314 NW2d 627 (1981). However, subsequent opinions of our Supreme Court have acknowledged and, for the most part, distinguished away the somewhat heightened degree of scrutiny associated with *Alexander* and *Manistee Bank & Trust Co.* See *Shavers, supra,* p 613, n 37; *O'Brien v Hazelet & Erdal,* 410 Mich 1, 19-20; 299 NW2d 336 (1980).

In *Manistee Bank & Trust Co, supra,* p 671, the substantial-relation-to-the-object or heightened-scrutiny test was reserved for situations "where the challenged statute carves out a discrete exception to a general rule and the statutory exception is no longer experimental." The traditional rational basis test, in contrast, applies to legislation for which there is a "perceived need for experimentation"; this reflects a recognition of the appropriateness of judicial deference to enactments that are primarily social and economic in their concern. Although this criterion has been applied in a manner that renders the traditional rational basis test applicable in most instances, see, e.g., *In re Jurek Estate,* 170 Mich App 778; 428 NW2d 774 (1988)(statute regulating distribution of intestate estate without provision for remote relatives of decedent held not violative of equal

We hold that the statutory disparity in treatment as to the compensation, retirement funding obligations, and retirement benefits violates equal protection. We are unable to discern any constitutionally appropriate basis for the disparities that would permit us to find a reasonable relationship to the object of the legislation or that would avoid the conclusion that the 36th District judges' preferred compensation treatment is arbitrary and unreasonable. Even though 36th District judges do serve in the most populous area of this state, defendant has not shown that the judges' duties are thereby expanded; statistical data submitted in this case suggests that their individual case load is less than plaintiff's own case load. Although defendant suggests that the particular compensation package afforded 36th District judges is attributable to the transition from those judicial positions superseded by the creation of the 36th District Court, it remains to be explained what significance these historical facts have at this present time or why they serve to justify more favorable compen-

protection); *Roy v Rau Tavern, Inc,* 167 Mich App 664; 423 NW2d 54 (1988) (dramshop act denial of recovery to parents of allegedly intoxicated person held not violative of equal protection), heightened scrutiny has been deemed applicable pursuant to the *Manistee* criterion in other cases, see *Village Green of Lansing v Bd of Water & Light,* 145 Mich App 379; 377 NW2d 401 (1985), lv den 424 Mich 907 (1986)(imposition of electricity charges for use in common areas of multifamily dwellings at commercial rather than residential rates held not violative of equal protection); *Winrick v City of Warren,* 99 Mich App 770; 299 NW2d 27 (1980)(antinepotism ordinance applicable to city employment practices held not violative of equal protection).

In this case, the *Alexander* test is the preferable mode of equal protection analysis. Statutes fixing levels of judicial compensation and regulating retirement benefits can hardly be understood as a legislative venture into matters of social or economic significance. Although the challenged statutes are no doubt of great interest to the district judges of this state, their subject matter is mundane in terms of a socioeconomic perspective. Moreover, the exclusion of 36th District judges from some of the less favorable terms of employment and their singling out for special privileges fits the characterization of a "discrete exception to a general rule." *Manistee Bank & Trust Co, supra,* p 671.

sation and benefits. In short, no reason has been put forth explaining why the duties, responsibilities, and circumstances of service obtaining in the 36th District Court provide the basis for any reasonable justification of more favorable treatment than their counterparts in the other judicial districts of this state. Accordingly, we find ourselves in agreement with the ruling of the Court of Claims that the statutory disparities are unconstitutional.

III

We turn now to defendant's challenge to the remedy granted by the Court of Claims to rectify these compensation-related disparities. Initially, we address the decision of the Court of Claims to award plaintiff money damages in the amount of $61,207.68, to make good lost salary that plaintiff would have earned and to refund retirement benefits that plaintiff would not have paid if he had been a 36th District judge from the time that he began to serve as a judge in 1982. We conclude that the award of damages for past infringements of equal protection was entirely inappropriate and that all relief must be prospective in application.

In *Smith v Dep't of Public Health,* 428 Mich 540; 410 NW2d 749 (1987), the Court addressed the question of whether the state was liable in damages for alleged misfeasance committed by state employees in violation of the plaintiff's right to equal protection pursuant to Const 1908, art 2, §§ 1 and 16. Strictly speaking, the instant case differs from *Smith* because it does not present an instance of that variety of claim known as the constitutional tort, which is based on a doctrine drawing its origins from the seminal decision in *Bivens v Six Unknown Named Agents of Federal*

*Bureau of Narcotics,* 403 US 388; 91 S Ct 1999; 29 L Ed 2d 619 (1971). Typically, a constitutional tort is committed by a governmental employee exercising discretionary powers so that constitutional rights personal to the plaintiff are thereby violated. Notwithstanding this distinction, *Smith* does share with this case the need to devise a framework for evaluating money damages as a potential redress for an equal protection violation, and we look to its counsel for insights into the approach of jurisprudence to remedies for past violations of constitutional rights.

The plaintiff in *Smith* sought damages for alleged violations of equal protection resulting from a forty-eight-year confinement in various mental health institutions under the color of various commitment orders issued by the probate court and state authorities. No single opinion issued in *Smith* achieved the concurrence of a majority of our Supreme Court, and a majority of the Court was only able to agree on the bare proposition that "[a] claim for damages against the state arising from violation by the state of the Michigan Constitution may be recognized in appropriate cases." *Smith, supra,* p 544. Three primary opinions were issued in *Smith,* each achieving the concurrence of two justices. The opinion authored by Justice BRICKLEY would have held that a claim based on equal protection is not amenable to remedy by damages. The opinion authored by Justice BOYLE opted for remand in order to allow for further development of the record. The opinion authored by Justice ARCHER did not reach the damages question, but instead found reversal appropriate on other grounds and joined in the remand result reached in the opinion authored by Justice BOYLE. Recognizing that the failure of the Court to reach a majority rationale for its result renders the

*Smith* decision nonbinding, we nevertheless consider, in turn, the opinions authored by Justices BRICKLEY and BOYLE for guidance on the issue of whether an equal protection violation may be remedied by damages.

In Justice BRICKLEY's opinion, the two-member minority of the Court, after conducting an exhaustive review of federal case law commencing with *Bivens,* concluded that it was inappropriate to infer a remedy of damages based on state guarantees of equal protection under the 1908 Constitution. This conclusion was the product of four distinct reasons derived from the *Bivens* line of cases and applied to the facts in *Smith*:

(1) Neither the United States Supreme Court nor the Sixth Circuit has explicitly recognized a damages remedy for constitutional violations when committed by state agencies or when premised on the Fourteenth Amendment. *Id.,* pp 627-629. Also, a contrary inference was drawn from the refusal of the United States Supreme Court to undertake appellate review of the contention made in *Mt Healthy Bd of Ed v Doyle,* 429 US 274, 278; 97 S Ct 568; 50 L Ed 2d 471 (1977), that a cause of action, asserted by way of analogy to *Bivens,* should be implied directly from the equal protection guarantee of the Fourteenth Amendment. *Smith, supra,* pp 629-630. This was thought to be significant because it "suggests caution in recognizing such a novel theory of recovery in our jurisprudence." *Id.,* p 630.

(2) Judicial recognition of a damages remedy for equal protection violations would not further the deterrence function of a *Bivens* remedy. *Id.,* pp 630-631. In *Bivens,* a damages remedy was recognized as an appropriate redress for an illegal search and seizure perpetrated by government agents in violation of the Fourth Amendment.

(3) The courts should defer to the policy-making expertise of the Legislature in devising remedies. *Id.,* p 631.

(4) In considering whether judicially fashioned remedies are appropriate, the courts should be sensitive to special factors counseling hesitation. In addition to the usual degree of deference afforded the Legislature in remedial matters, the Court noted the provision in Const 1963, art 1, § 2 empowering the Legislature to implement the state constitutional guarantee of equal protection by enacting appropriate legislation.

In contrast to Justice BRICKLEY's opinion, the opinion authored by Justice BOYLE did not decide the issue presented in *Smith,* but instead the two concurring justices opted to remand the case on the ground that the factual record was inadequately developed. The opinion indicated only that damages for a state constitutional violation are appropriate in some cases and inappropriate in others. *Id.,* pp 647-648. However, the following considerations were addressed to the attention of the lower court on remand: (1) "the text, history, and previous interpretations of the specific provision for guidance on the propriety of a judicially inferred damages remedy," (2) the degree of specificity of the constitutional provision, more clearcut constitutional guarantees being more likely to lend themselves to a damages remedy, (3) the availability of another remedy, e.g., injunctive relief, and (4) other factors dependent on the specific facts and circumstances of a given case. *Id.,* pp 648-652.

We find Justice BRICKLEY's analysis persuasive, both in reasoning and in the greater degree of guidance and certainty afforded inferior courts than that provided by Justice BOYLE's opinion. Applying the four considerations in Justice BRICK-

LEY's opinion to this case, we note first that the parties do not cite any precedential authority for a damages remedy for the type of constitutional violation at issue here, nor are we aware of any such authority. Second, deterrence of tortious conduct is not at issue in this case. Third, issues of judicial compensation would appear to be uniquely directed to the policy-making expertise of the Legislature. Fourth, we note, as did the BRICKLEY minority in *Smith,* that provision in Const 1963, art 1, § 2 empowering the Legislature to implement enforcement mechanisms for equal protection. This reinforces judicial reluctance on our part to sanction a damages remedy.

The factors noted in Justice BOYLE's approach are not altogether different from those relied upon by Justice BRICKLEY, and many of these factors emerge in both opinions. In conjunction with concerns articulated by Justice BOYLE, we note that equal protection is a broad and amorphous concept, not readily lending itself to the relative degree of certainty associated with theories underlying recognized constitutional torts. *Id.,* p 651. Plaintiff has as an alternative the remedy of prospective equitable relief. Nothing in Justice BOYLE's analysis alters the conclusion that damages are inappropriate under the specific facts, circumstances, and theories advanced in this case.

Applying by analogy either approach addressing damages in *Smith,* we conclude that damages are an inappropriate redress for the equal protection violation established in this case.

Damages are inappropriate for an even more basic reason. As already noted, this case does not present a situation where a government official, vested with official discretion, exercises that discretion in such a manner that an essentially private wrong is inflicted on the aggrieved plaintiff. Un-

like the allegations underlying a constitutional tort, the involvement of lower level governmental officials in this case is limited to ministerial tasks mandated by the terms of the statutes for judicial compensation, e.g., calculating and paying judicial salaries, assessing contributions to the retirement fund, paying out retirement benefits. This is not in any sense discretionary nor is it a basis for imposing liability against the state, although it is certainly within the judicial prerogative to enjoin the same officials from future enforcement of offending legislation. The brunt of responsibility for plaintiff's deprivation, if it can be laid anywhere, must be attributed to the act of promulgating the offending statutes, accomplished as a function of our state's political processes. In other words, the state is being sued for damages because of the Legislature's enactment of unconstitutional legislation that duly attained the force of law. Viewed in this manner, the damages awarded in this case are also objectionable on the basis of the most basic notions of common-law legislative immunity.

State legislators and the institution of the Legislature itself enjoy a broad-based immunity for the enactment of legislation and for other acts committed within the sphere of legislative activity. *Supreme Court of Virginia v Consumers Union of the United States,* 446 US 719, 731-734; 100 S Ct 1967; 64 L Ed 2d 641 (1980); *Tenney v Brandhove,* 341 US 367; 71 S Ct 783; 95 L Ed 1019 (1951). Furthermore, if the cause of action in this case is viewed as sounding in tort, then governmental immunity would prove to be an insuperable obstacle, *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 617-621; 363 NW2d 641 (1984), because our Legislature, even in enacting an unconstitutional statutory scheme, was within its broad sweep of authority emanating from Article 4

of the Michigan Constitution. Immunity protects the state from the obligation of retroactively redressing a deprivation caused by an unconstitutional enactment.

For all of these reasons, we conclude that it was error for the Court of Claims to grant damages or other retroactive relief to redress plaintiff's equal protection claim. In broader terms, we believe that damages for past deprivations of equal protection are inconsistent with jurisprudential notions of redressing wrongs. We believe that the appropriate remedy under these circumstances should seek to eliminate the offending disparity prospectively. Attempting to right past wrongs in this case means either that the 36th District judges must disgorge excessive benefits paid to them since the inception of the 36th District Court or that plaintiff and the other district judges not sitting in the 36th District Court must receive damages for all disparities sustained since that time. Being mindful of the precedential repercussions of this decision, we unequivocally state our reluctance to fashion a novel remedy with such draconian repercussions to be ultimately borne by the various funding sources for judicial compensation and retirement benefits, i.e., the taxpayers. The award of damages granted by the Court of Claims is vacated.

IV

Because we have concluded as a matter of law that damages are an inappropriate remedy for plaintiff's concededly valid allegation of a deprivation of equal protection, we are, at this juncture, forced to address the issue of whether the Court of Claims had subject-matter jurisdiction to entertain the claim and to grant any relief other than money damages.

Pursuant to MCL 600.6419(1); MSA 27A.6419(1), the Court of Claims has exclusive jurisdiction to "hear and determine all claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the state and any of its departments, commissions, boards, institutions, arms, or agencies." The Court of Claims also has jurisdiction concurrent with the circuit court over any demand for equitable or declaratory relief ancillary to a claim filed pursuant to MCL 600.6419; MSA 27A.6419. MCL 600.6419a; MSA 27A.6419(1). Otherwise, the Court of Claims lacks jurisdiction to entertain equitable claims. *Rieth-Riley Construction Co, Inc v Dep't of Transportation,* 136 Mich App 425, 434; 357 NW2d 62 (1984), lv den 422 Mich 911 (1985); *Crider v Michigan,* 110 Mich App 702, 713-715; 313 NW2d 367 (1981), lv den 414 Mich 953 (1982). Thus, the Court of Claims had no jurisdiction to grant injunctive relief in this case.

Jurisdiction to grant declaratory relief is a more difficult matter. In *Taylor v Auditor General,* 360 Mich 146; 103 NW2d 769 (1960), it was held that the Court of Claims had no jurisdiction to grant declaratory judgments. However, in *Greenfield Construction Co, Inc v Dep't of State Highways,* 402 Mich 172; 261 NW2d 718 (1978)(plurality opinion), three justices expressly subscribed to the view that the Court of Claims had declaratory jurisdiction and two others intimated that they would follow that view if the issue were presented in an appropriate case. See also *Grunow v Sanders,* 84 Mich App 578; 269 NW2d 683 (1978), lv den 405 Mich 835 (1979). The holding in *Taylor,* premised on the absence of an equity side to the Court of Claims, was discredited in view of the subsequent abolition of procedural distinctions between the law and equity sides of a court docket. However, even under the expressions in *Greenfield* affording

the power to grant declaratory judgment, it is assumed that the Court of Claims would otherwise have jurisdiction over the substantive claim underlying the demand for relief. To that end, Justice Levin, perhaps the leading advocate of this view, stated:

> The Court of Claims, under its enabling act, has exclusive jurisdiction of an action asserting a claim or demand, ex contractu or ex delicto, against the state or one of its departments. While an action for a declaratory judgment involving the state need not assert a claim or demand against it —and if it does not it may, subject to other provisions of law, be brought in the circuit court—an action for a declaratory judgment asserting such a claim or demand is subject to the exclusive jurisdiction of the Court of Claims. [402 Mich 230.]

Thus, declaratory judgment is appropriate in the Court of Claims only if the underlying dispute or controversy is of a nature lending itself to an eventual remedy in money damages against the state or one of its branches.

As already noted, the allegations asserted as a cause of action in this case are not to be remedied by damages. Therefore, plaintiff's cause of action is not a "claim" within the meaning of the statutorily defined jurisdiction of the Court of Claims, and declaratory judgment could not have been properly granted within the scope of that jurisdiction.

Because the Court of Claims did not have jurisdiction to grant any relief for plaintiff's equal protection claim, this case is dismissed.

Dismissed.