650 N.W.2d 392 (2002)
251 Mich. App. 392
Annabelle R. HARVEY, Beneficiary of Paul Harvey, Deceased, and Michael F. Merritt, Plaintiffs-Appellants,
and
Bruce A. Fox, Plaintiff,
v.
STATE of Michigan, Department of Management & Budget, Bureau of Retirement Services, and Judges Retirement Board, Defendants-Appellees.
Docket No. 227140.
Court of Appeals of Michigan.
Submitted January 9, 2002, at Lansing.
Decided May 10, 2002, at 9:30 a.m.
Released for Publication August 23, 2002.
*393 Michael F. Merritt, Brighton, and Kasiborski, Ronayne & Flaska (by Chester E. Kasiborski, Jr., and Kenneth A. Flaska), Detroit, for the plaintiffs.
Jennifer M. Granholm, Attorney General, Thomas L. Casey, Solicitor General, and Stephen M. Rideout and Michelle M. Rick, Assistant Attorneys General, for the defendants.
Before: FITZGERALD, P.J., and BANDSTRA and K.F. KELLY, JJ.
BANDSTRA, J.
Plaintiffs appeal as of right from the circuit court's opinion and order granting summary disposition to defendants under MCR 2.116(C)(10) and holding that the treatment accorded by statute to judges of the 36th District Court with regard to retirement benefits does not violate the Equal Protection Clauses of U.S. Const, Am XIV and Const 1963, art 1, § 2. The trial court had previously granted summary disposition in favor of defendants and, on appeal to this Court, we vacated the trial court's opinion and remanded the case for fact finding and application of the intermediate scrutiny test. We now reverse and remand.

Factual Background and Prior Proceedings
Plaintiff judge[1] is a retired district judge who served "outstate" rather than in the 36th District Court in Detroit. At issue in this appeal is the statutory scheme *394 that guarantees 36th District Court judges a greater retirement benefit than judges from other district courts.[2] Specifically, 36th District Court judges, who are "plan 5" members,[3] are entitled to a retirement benefit calculated on a compensation level including both the salary paid to them by the state and the salary paid to them by the district control unit of the 36th District Court,[4] while other district court judges, who are "plan 3" members,[5] are paid a retirement benefit based on compensation including only the salary paid by the state.[6] Although the statutes have been amended repeatedly, this system has been in place since 1980.
In their brief, the state defendants provide an explanation of the reasons this approach was initially adopted:
In the early 1980s, the State Legislature recognized the practical need for state government to streamline its operations and eventually assume the cost of the State's judicial system....
... The need to reorganize and streamline was most urgent in Wayne County and the City of Detroit because they were in financial distress.... For that reason, the Legislature took a greater role in reorganizing and assuming the court operation costs of the newly created 36th District Court....

* * *
To address the problems facing Wayne County and Detroit and to pave the way for state funding of trial court operations, the Legislature suggested that the courts in Wayne County and Detroit be reorganized with the help of much-needed State money.... Thus, the natural and distinguishing characteristics of the 36th District Court from other districts are its origin and history....
The decision by the Legislature to allow the [state-operated Judicial Retirement System] to be the retirement carrier for the locally-paid salaries of 36th District Court judges, in addition to being the retirement carrier for their state-paid salaries, was a discretionary one in conformity with the Legislature's scheme to assist the financially troubled City of Detroit.
The trial court here appropriately characterized the disparate benefit scheme about which plaintiffs complain as being an experimental approach to funding retirement benefits that began in the 36th District Court but which has not since been expanded fully for the benefit of other district court judges:
The Court takes judicial notice of the fact that the legislative scheme here at issue was enacted in 1980. Both sides appear to agree that the primary legislative intent was to make a start toward full State funding of Michigan's trial court system. Defendants assert that the legislation set "a target of October 1, 1988 for State assumption of costs for all trial court operations," ... and that this goal was not met; the Court takes judicial *395 notice of the fact that it is still not met as of March of 2000.
Although the legislature has enacted a number of amendments to the State's judicial pension scheme in the intervening years, the essential elements differentiating calculation of 36th District judges' defined benefit pensions remain as enacted in 1980 (the recently authorized "defined contribution" pension option is not at issue in this case). This is analogous to the Legislature having declared in 1980, "we intend to give every Michigan taxpayer an annual exemption of $5,000, and we begin with John Smith." When, in the year 2000, John Smith remains the sole beneficiary, it is time to recognize the reality.
The trial court noted that, in a prior appeal of this matter to our Court (Harvey I ),[7] a panel characterized the special treatment afforded to retired judges of the 36th District Court as being "a discrete exception to a general rule" that is "no longer `experimental.'"[8]
The Harvey I panel further concluded that plaintiffs' equal protection claim should be tested using "the heightened or intermediate level [of scrutiny]."[9] The matter was remanded to the trial court for further fact finding in this regard, the panel directing that "when legislation is subject to intermediate scrutiny, the state bears the burden of showing the legislation is substantially related to an important state interest.... Thus, defendants must show the facially discriminatory provisions attacked by plaintiffs are substantially related to an important state interest."[10]
Notwithstanding that the burden was thus clearly on defendants to develop a factual record showing that the statutory scheme at issue is substantially related to an important state interest, the parties stipulated that there is no dispute of facts or need for trial and both moved for summary disposition. The trial court denied plaintiffs' motion and granted defendants', concluding that there was no equal protection violation.

Analysis
We review summary disposition decisions and constitutional issues de novo.[11] We conclude that the trial court erroneously determined that the statutory scheme did not violate equal protection.
This question was considered in 77th Dist. Judge v. Michigan.[12] There, this Court analyzed, in dicta,[13] a similar, older version of the present statutory scheme, and found that it violated equal protection:
We hold that the statutory disparity in treatment as to ... retirement benefits violates equal protection. We are unable to discern any constitutionally *396 appropriate basis for the disparities that would permit us to find a reasonable relationship to the object of the legislation or that would avoid the conclusion that the 36th District judges' preferred... treatment is arbitrary and unreasonable.... Although defendant suggests that the particular compensation package afforded 36th District judges is attributable to the transition from those judicial positions superseded by the creation of the 36th District Court, it remains to be explained what significance these historical facts have at this present time or why they serve to justify more favorable compensation and benefits. In short, no reason has been put forth explaining why the duties, responsibilities, and circumstances of service obtaining in the 36th District Court provide the basis for any reasonable justification of more favorable treatment than their counterparts in the other judicial districts of this state. Accordingly, we find ... that the statutory disparities are unconstitutional.[14]
In other words, the 77th Dist. Judge panel reasoned that whatever historical reasons might have justified treating 36th District judges differently in the beginning of the process of full funding in 1980, those "historical facts" could no longer "justify more favorable ... benefits" in 1989.[15]
We note that 77th Dist. Judge has been cited approvingly in several cases and that its equal protection analysis has never been cited disapprovingly.[16] We find persuasive its conclusion that the statutory scheme challenged here could no longer be justified under an equal protection analysis in 1989. This conclusion applies with even greater force at this later date.
The trial court used reasoning similar to that of 77th Dist. Judge in concluding that the challenged benefit scheme of the Judges Retirement Act,[17] considered alone, "fails the test" of equal protection scrutiny because "[i]t is no longer related to the important governmental purpose of full State funding of judicial salaries or pensions." Nonetheless, the trial court examined "the entire body of state law governing district judges' pensions" and concluded that there was no equal protection violation. We disagree.
The trial court reasoned that other statutes grant local funding units the authority to provide a judicial retirement pension and, in fact, that many such units do provide a pension supplementary to that afforded by the statutes at issue here. The court further noted that pursuant to that authority, at least one funding unit has provided a local pension which, when combined with the pension afforded by the challenged state system here, is greater than the pension afforded to similarly situated 36th District judges. The trial court reasoned that because some outstate judges might receive equal or better total retirement benefit treatment than do 36th District Court judges, the equal protection challenge fails.
We find this reasoning erroneous. The gist of plaintiffs' complaint is that the state, through the statutes challenged, has guaranteed to retired judges of the 36th District Court a level of retirement benefits that is not guaranteed to retired judges of outstate district courts. That, in fact is the case, and, with that conclusion, an equal protection analysis appropriately *397 should end. It does not matter that some retired judges of outstate district courts might, depending on the largess of their local funding units, receive a total retirement benefit equal to or better than that afforded to 36th District Court judges.[18] What matters is that retired judges of outstate district courts do not receive the same statutorily guaranteed benefit as do retired judges of the 36th District Court.
We reverse the decision of the trial court granting summary disposition to defendants and denying summary disposition to plaintiffs. We remand for further proceedings regarding the appropriate remedy, if any, that might be afforded to plaintiffs.[19] We do not retain jurisdiction.
NOTES
[1] Paul Harvey, a retired district court judge, was one of the original plaintiffs in this matter. During the pendency of the proceedings, Paul Harvey died and Annabelle Harvey, his beneficiary, was substituted as a party plaintiff. Also during the proceedings on remand, Michael F. Merritt, a retired district court judge, was substituted for Bruce A. Fox, the other of the original named party plaintiffs.
[2] Although plaintiffs' original complaint also contained allegations regarding disparity in salaries between district judges, those allegations are no longer at issue.
[3] MCL 38.2108(8).
[4] MCL 38.2104(d).
[5] MCL 38.2108(3).
[6] MCL 38.2104(b). As the state defendants point out in their brief, this disparity is mitigated, but only somewhat, by current statutory provisions allowing district court judges to convert a portion of their locally paid salary to their state-paid salary for retirement benefit calculation purposes. See M.C.L. § 38.2503 and M.C.L. § 38.2504.
[7] Harvey v. Michigan, unpublished opinion per curiam of the Court of Appeals, issued January 3, 1997, 1997 WL 33354621 (Docket No. 187112).
[8] Id., slip op. at 1-2.
[9] Id., slip op at 2.
[10] Id. The holding in Harvey I was limited to a determination of the level of scrutiny applicable to plaintiffs' equal protection claim. Contrary to plaintiffs' arguments, the Harvey I panel did not conclude that the discriminatory statutory classification at issue here violated the Equal Protection Clause when subjected to that level of scrutiny.
[11] Spiek v. Dep't of Transportation, 456 Mich. 331, 337, 572 N.W.2d 201 (1998); Kuhn v. Secretary of State, 228 Mich.App. 319, 324, 579 N.W.2d 101 (1998).
[12] 77th Dist. Judge v. Michigan, 175 Mich. App. 681, 438 N.W.2d 333 (1989).
[13] 77th Dist. Judge determined that the Court of Claims had no jurisdiction to grant injunctive and declaratory relief or to award plaintiff's back pay and back retirement benefits. Id. at 692-700, 438 N.W.2d 333. Because those jurisdictional holdings were outcome determinative, that panel's conclusions regarding the constitutionality of the statutory scheme challenged are dicta.
[14] Id. at 691-692, 438 N.W.2d 333.
[15] Id.
[16] See, e.g., Lewis v. Michigan, 464 Mich. 781, 787-788, n. 4, 629 N.W.2d 868 (2001), and In re Pensions of 19th Dist. Judges under Dearborn Employees Retirement System, 213 Mich.App. 701, 705, 540 N.W.2d 784 (1995).
[17] MCL 38.2101 et seq.
[18] Similarly, if a statute criminalizing certain behavior but only if committed by certain citizens was challenged on equal protection grounds, it would not matter that, through the exercise of prosecutorial discretion, some targeted citizens engaging in that behavior were never charged.
[19] We do not address defendants' arguments that no damage award can be afforded to plaintiffs or that the circuit court is without subject-matter jurisdiction to consider this case. These arguments did not form the basis for the trial court's decision to grant defendants summary disposition and would be better resolved, at least initially, at the trial court level.