J. Richard **ERNST**, et al., Plaintiffs,

v.

Douglas B. **ROBERTS,**
et al., Defendants.

No.  CIV.A.01–CV–73738–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 30, 2002.

Kenneth A. Flaska, Chester E. Kasiborski, Jr., Kasiborski, Ronayne, Detroit, MI, for Plaintiffs.

Lori M. Silsbury, W. Alan Wilk, Dykema Gossett, David L. Balas, Michigan Department of Attorney General, Assistant Attorney General, Lansing, MI, for Defendants.

### OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

FRIEDMAN, District Judge.

This matter is presently before the court on the following motions: (1) defendants' motion to dismiss or, in the alternative, for summary judgment; (2) defendants' motion for abstention or, alternatively, for a stay of proceedings; and (3) plaintiffs' motion to strike affidavit of Daniel A. Norberg. The motions have been fully briefed and the court has heard oral argument. For the reasons stated below, the court shall grant defendants' motion to dismiss plaintiffs' federal claims, decline to exercise supplemental jurisdiction over plaintiffs' state claims, and deny the remaining motions as moot.

### Background

The plaintiffs in this case are a Michigan circuit judge, a Michigan probate judge, a Michigan district judge, and a retired Michigan circuit judge. The case has not been certified as a class action, nor have plaintiffs moved yet for class certification. Nonetheless, plaintiffs purport to represent all active and retired Michigan judges who are "similarly situated." The basic allegation in the complaint is that the Judges Retirement Act of 1992 ("JRA"), which created the Judges Retirement System ("JRS"), treats judges of the 36th District Court more favorably than the "non–36th District Court judges." Plaintiffs claim that this disparity violates equal protection because there is no rational basis for providing judges of the 36th District Court more favorable pensions.

The defendants are:

— Mark Murray, the Treasurer of the State of Michigan;

— Christopher DeRose, the Director of the Office of Retirement Systems, which is part of the Michigan Department of Management and Budget. DeRose is also the executive secretary of the Judges Retirement System; and

— George Elworth, Roy Pentilla, Eric Doster, Lyle Van Houten, and Robert Ransom, all of whom are members of the Michigan Judges Retirement Board ("MJRB").

Under the JRA, as amended in 1996, all Michigan judges are covered by one of two pension plans. "Tier 1" is a defined benefit plan; "Tier 2" is a defined contribution

plan. Judges who first entered office before March 31, 1997, were in Tier 1. Judges who first entered office thereafter were in Tier 2. The 1996 amendment to the act permitted Tier 1 participants to move to Tier 2, but they had to make this election by a certain date in 1998.

The complaint is presented in ten counts. Count I claims that plaintiffs' rights to equal protection under the Fourteenth Amendment are being violated because:

per the terms of the Act, judges of the 36th District Court have been and are entitled to receive a retirement allowance under the Tier 1 Plan which exceeds that to which Plaintiffs and other members of the class have been or are entitled to receive notwithstanding the fact that the judges of the 36th District Court have contributed and are contributing a smaller percentage of their compensation into the Tier 1 Plan for that greater retirement allowance.

Complaint ¶ 30. Count II asserts the same claim as Count I, but under the equal protection clause of the Michigan Constitution (Article I, section 2).

Count III alleges that plaintiffs' equal protection rights under the Fourteenth Amendment are being violated because:

the Act does not provide for annual percentage increases in the retirement allowance paid under the Tier 1 Plan although certain of the statutes creating the retirement plans of other state and governmental employees provide for annual percentage increases in the retirement allowance paid.

Complaint ¶ 41. Count IV asserts the same claims as Count III, but under the equal protection clause of the Michigan Constitution.

Count V alleges that plaintiffs' equal protection rights under the Fourteenth Amendment are being violated because:

51. For members of the Tier 1 Plan who elected to terminate membership in the Tier 1 Plan and participate in the Tier 2 Plan, an amount equal to the Actuarial Present Value ("APV") of the member's accumulated benefit obligation as of June 30, 1998 was calculated in order that a sum of money in that amount be transferred from reserves of the Tier 1 Plan to the member's account in the Tier 2 Plan.

52. Due to the fact that The Act prescribed only one APV date and due to the manner in which The Act prescribed calculation of the APV, particularly as to the benefit commencement age component of that calculation, is was possible for gross and unjust disparities in APV to come into existence as to Tier 1 Plan members whose ages were but 1 day different and/or whose credited service was but 1 day different.

53. The designation of a single date for calculation of APV: (a) caused certain members of the Tier 1 Plan to decide against making an election to transfer to the Tier 2 Plan and to forego its prospective benefits and advantages since to transfer would have required them to in effect forfeit prospective benefits of the Tier 1 Plan whereas other members of the Tier 1 Plan could elect to transfer to the Tier 2 Plan without suffering such a forfeiture; and (b) resulted in a significantly undervalued APV for certain members of the Tier 1 Plan who elected to transfer to the Tier 2 Plan which resulted in the transfer to their Tier 2 Plan accounts of a substantially smaller sum of money than that transferred to the Tier 2 accounts of others of nearly identical age and length of service.

54. The selection of a single APV date was arbitrary and capricious and created two unequal classes of Tier 1 members: those who could elect trans-

fer to the Tier 2 Plan without any forfeiture of prospective benefits and those who could not.

55. The Tier 1 Plan members and former Tier 1 Plan members who could not elect to transfer to the Tier 2 Plan without the forfeiture of prospective benefits and/or substantial sums of money have been denied the equal protection of the laws in violation of their rights guaranteed by the Fourteenth Amendment.

Count VI asserts the same claims as Count V, but under the equal protection clause of the Michigan Constitution.

Count VII asserts that plaintiffs' equal protection rights under the Fourteenth Amendment are being violated because:

65. . . . for those who elected to terminate membership in the Tier 1 Plan in order to participate in the Tier 2 Plan the dollar amount transferred from reserves of the Tier 1 Plan to that person's Tier 2 Plan account was the actuarial present value of the Tier 1 Plan's benefit obligation to the member, which amount for judges of the 36th District Court was greater than the amount for circuit, probate and other district court judges of the same age and with the same length of service since The Act affords judges of the 36th District Court a higher retirement allowance under the Tier 1 Plan.

Count VIII asserts the same claims as Count VII, but under the equal protection clause of the Michigan Constitution.

Count IX is entitled "Wasting Trust." This claim alleges that the Tier 1 Plan is overfunded by $109 million. Plaintiffs allege that "the amendment of the Act to prohibit the enrollment in the Tier 1 Plan of persons who became judges on or after March 31, 1997 has caused a termination (or partial termination) of the Tier 1 Plan." Complaint ¶ 79. Plaintiffs further allege that "according to principles of trust law,

the excess contributions should be distributed to members, vested former members, retirants and retirement allowance beneficiaries of the Tier 1 Plan." *Id.* ¶ 82.

Finally, Count X asserts a claim for breach of fiduciary duty. This claim alleges that defendants have breached their fiduciary duty by failing to disclose in their annual report of the Judges Retirement System the amount of court fees received and where they have been deposited, and by making improper transfers of court fees from one fund to another.

For relief, plaintiffs are asking the court to:

1. Certify this action as a class action pursuant to FRCivP 23;

2. Declare that The Act violates the Fourteenth Amendment and Article I, Section 2;

3. Preliminarily and permanently enjoin Defendants from requiring those Plaintiffs and member of The Class who have remained as participants in the Tier 1 Plan to contribute a higher percentage of their compensation for a retirement allowance than judges of the 36th District Court;

4. Order that Defendants forthwith refund to those Plaintiffs and members of The Class who are members, former vested members, retirants, or retirement allowance beneficiaries of the Tier 1 Plan, with interest, that portion of their past contributions into the Tier 1 Plan in excess of the past contributions required of judges of the 36th District Court;

5. Order Defendants to afford to Plaintiffs and The Class members who have remained members of the Tier 1 Plan but have not yet retired a retirement allowance upon their retirements equal to that to which judges of the 36th District Court with the same age and length of service are or will be entitled;

6. Order Defendants to forthwith make restitution to Plaintiffs and members of The Class who are retirants or retirement allowance beneficiaries by paying to them, with interest, the difference between the dollar amount of retirement allowance that they have received and the greater amount of retirement allowance that they would have received if they had been judges of the 36th District Court;

7. Order that Defendants forthwith afford to Plaintiffs and members of The Class who are retirants or retirement allowance beneficiaries of the Tier 1 Plan an annual percentage increase in retirement allowance equivalent to the annual percentage increase afforded by other state funded retirement systems which provide for annual percentage increases in benefits;

8. Order that Defendants forthwith make restitution to those Plaintiffs and members of The Class who are retirants or retirement allowance beneficiaries of the Tier 1 Plan by paying to them, with interest, the difference between the dollar amount of retirement allowance they have received and the greater amount that they would have received if the Tier 1 Plan had afforded annual percentage increases in retirement allowance equivalent to those afforded by other state funded retirement systems;

9. Order Defendants to permit Plaintiffs and members of The Class the opportunity to terminate membership in the Tier 1 Plan and irrevocably elect to participate in the Tier 2 Plan as of a designated date certain each year, which date will be used for calculating APV;

10. Order Defendants to permit Plaintiffs and members of The Class who have elected to transfer from the Tier 1 Plan to the Tier 2 Plan the opportunity to have the Actuarial Prevent Value ("APV") of their accounts recalculated as of a date subsequent to June 30, 1998 and order Defendants to transfer the difference between the recalculated APV and the APV previously calculated, with interest, from the reserves of the Tier 1 Plan to that person's Tier 2 account.

11. Order that, as to Plaintiffs and members of The Class who have elected to transfer to the Tier 2 Plan, Defendants recalculate their APV as of the applicable APV date as though the Tier 1 Plan's accumulated benefit obligation to them was equivalent to that of a judge of the 36th District Court of the same age and length of service and transfer the difference between the recalculated APV and the APV previously calculated, with interest, from the reserves of the Tier 1 Plan to that person's Tier 2 Plan account;

12. Order Defendants to pay The Excess Contributions to members, retirants and retirement allowance beneficiaries of the Tier 1 Plan;

13. Preliminarily and permanently enjoin Defendants from transferring or paying monies from the Tier 1 Plan's reserve for employer contributions to the court fee fund, from transferring or paying monies from the court fee fund to the court equity fund, and from transmitting court fees to the treasurer for deposit into the court fee fund instead of into the reserve for employer contributions;

14. Order Defendants to cause the preparation of an annual report for the current fiscal year and future fiscal years that fully and accurately reports all of the reserve accounts of the Tier 1 Plan and of the court fee fund and all activities of the Tier 1 Plan, including but not limited to the transfer or deposit of monies into and between various reserves of the Tier 1 Plan, the deposit of monies into the court fee fund, and the

transfer or payment of monies out of the court fee fund into the court equity fund;

15. Order Defendants to provide an accounting for past fiscal years of the various reserve accounts of the Tier 1 Plan, of the court fee fund, and of all of the activities of the Tier 1 Plan, including but not limited to the transfer or deposit of monies into and between the various reserve accounts of the Tier 1 Plan, the deposit of monies into the court fee fund, and the transfer of payment of monies out of the court fee fund into the court equity fund;

16. Preliminarily and permanently enjoin Defendants, their successors, and their agents from transferring to the treasury at the time of termination of the Tier 1 Plan those funds remaining in the various accounts in the Tier 1 Plan in excess of those needed to pay retirement allowances to members, vested former members, retirants and retirement allowance beneficiaries of the Tier 1 Plan and order Defendants and their successors to pay such funds to those persons who at time of termination are members, vested former members, retirants, or retirement allowance beneficiaries;

17. Award Plaintiffs and members of The Class attorneys fees pursuant to 42 USC § 1988;

18. Award Plaintiffs and members of The Class interest to which they are entitled; and

19. Award Plaintiffs and members of The Class such additional or different relief to which they are entitled.

Complaint, pp. 24–29.

### Defendants' Motion to Dismiss

While defendants make several arguments in support of their motion to dismiss or for summary judgment, their claim to Eleventh Amendment immunity is dispositive. Having carefully considered the matter, the court believes that plaintiffs' federal claims (Counts I, III, V, and VII) must be dismissed because defendants are immune under the Eleventh Amendment, and that the court should decline to exercise supplemental jurisdiction over plaintiffs' state claims (Counts II, IV, VI, VIII, IX, and X).

■ The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This amendment bars suits against a state by citizens of any state. *See Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

■ There are three exceptions to this general rule of immunity. *See Carten v. Kent State Univ.,* 282 F.3d 391, 398 (6th Cir.2002). The first occurs when a state consents to suit, and the second occurs where Congress has abrogated state immunity. Neither of these exceptions even arguably applies in this case.

■ The third exception occurs where a state official is sued in his individual capacity for violating plaintiff's federal constitutional rights. This exception to Eleventh Amendment immunity was first recognized by the Supreme Court in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), where plaintiffs sued the Minnesota attorney general and obtained an injunction prohibiting him from enforcing a state statute which would have confiscated plaintiffs' property without due process. As the Sixth Circuit has explained,

> The idea behind this exception is that a suit against a state officer is not a suit against the state when the remedy sought is an injunction against an illegal action, for an officer is not acting on behalf of the state when he acts illegally.

In effect, the illegal act strips the state officer of his character as an agent of the state for the purposes of the Eleventh Amendment. Injunctive relief is available under the *Young* exception only against state officers—not the state itself—who violate federal law. Relief ancillary to injunctive relief, such as attorneys' fees is also permitted. However, retroactive relief, such as money damages, is not permitted because such relief would require the "payment of funds from the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

*Lawson v. Shelby County, Tenn.*, 211 F.3d 331, 335 (6th Cir.2000).

Plaintiffs' suit is barred to the extent plaintiffs seek money damages as opposed to purely prospective, injunctive relief. As noted in *Lawson*, the Eleventh Amendment absolutely bars any suit against state officials if the plaintiffs are requesting any type of monetary compensation. *See also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–102 n. 11, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (Eleventh Amendment applies whenever the state is the "real, substantial party in interest," and this is the case whenever "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration"). In addition, the Eleventh Amendment absolutely bars any suit against state officials who allegedly have violated state law. *See id.* at 106, 104 S.Ct. 900 ("it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law").

In this case, the parties disagree as to whether defendants are actually state officials and whether any of the requested monetary relief, if granted, would be paid from state funds. Plaintiffs claim that the Judges Retirement System is not in fact an "arm of the state" and, therefore, the Eleventh Amendment does not apply because the state is not directly affected and any money judgment would not be paid from state funds.

In *Hall v. Medical Coll. of Ohio*, 742 F.2d 299, 301 (6th Cir.1984), the court listed nine factors which should be considered in deciding whether a "public agency or institution ... can be characterized as an arm or alter ego of the state."[1] The most important factor is whether any judgment in plaintiffs' favor would require the payment of state funds. *See Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"); *Hall*, 742 F.2d at 304. Consideration of these factors leads to the conclusion that defendants are entitled to Eleventh Amendment immunity.

In this case, there can be no serious doubt that the Michigan Judges Retirement Board is an arm of the State of

1. These factors are: (1) local law and decisions defining the status and nature of the agency involved in its relation to the sovereign; (2) whether, in the event plaintiff prevails, the payment of the judgment will have to be made out of the state treasury; (3) whether the agency has the funds or the power to satisfy the judgment; (4) whether the agency is performing a governmental or proprietary function; (5) whether the agency has been separately incorporated; (6) the degree of autonomy the agency has over its operations; (7) whether the agency has the power to sue and be sued and to enter into contracts; (8) whether the agency's property is immune from state taxation; and (9) whether the sovereign has immunized itself from responsibility for the agency's operations. *See Hall*, 742 F.2d at 302 (adopting factors articulated in *Blake v. Kline*, 612 F.2d 718, 722 (3d Cir.1979)).

Michigan. The Michigan Judges Retirement System and the Michigan Judges Retirement Board were created by the Michigan Judges Retirement Act of 1992, M.C.L. §§ 38.2101 et seq., a detailed and comprehensive statute. The board's members are the Michigan state Treasurer, the Michigan Attorney General, the Michigan deputy legislative auditor general, and two members appointed by Michigan's Governor with the advice and consent of the Michigan Senate. *See* M.C.L. § 38.2202(1). Board members are compensated for their expenses on a per diem basis by the Michigan Legislature. *See* M.C.L. § 38.2202(4). Board members must take an oath of office, which must be filed with the Michigan Secretary of State. *See* M.C.L. § 38.2203(1). The board promulgates its rules pursuant to the Michigan Administrative Procedures Act, and its meetings must be held in accordance with the Michigan Open Meetings Act. *See* M.C.L. § 38.2204(2), (3). Michigan's Department of Management and Budget is the entity responsible "for the budgeting, procurement, and related management functions of the retirement system," M.C.L. § 38.2205, and the Michigan State Treasurer "is the treasurer of the retirement system." M.C.L. § 38.2206(1). The State Treasurer is required to invest the retirement system funds in compliance with another comprehensive state statute, known as the Public Employee Retirement System Investment Act. *See* M.C.L. § 38.2206(1); M.C.L. §§ 38.1132— 38.1140i. The State Treasurer is required to deposit retirement system funds "in the same manner and subject to the laws governing the deposit of state funds by the state treasurer." M.C.L. § 38.2206(1). The Michigan Attorney General is the board's legal advisor and s/he represents the board in all litigation. *See* M.C.L. § 38.2207. The retirement system is required to prepare an annual report each fiscal year "regarding the financial, actuar-

ial, and other activities of the retirement system," and present it to Michigan's Governor and Legislature. M.C.L. § 38.2209. Further, "[t]he retirement system shall draw its warrants upon the state treasury, payable out of funds of the retirement system, for the payment of retirement allowances, accumulated contributions, and the payment of salaries and other expenses necessary in the administration of the retirement system." M.C.L. § 38.2208. The retirement system is funded, in part, by annual legislative appropriations and other public monies. *See* M.C.L. §§ 38.2302, 38.2304. Member contributions are not taxed until disbursed from the retirement system. *See* M.C.L. § 38.2306(1).

While plaintiffs assert that the judges' retirement board is autonomous, they have named the state treasurer (Douglas Roberts) and the director of the department of management and budget (Christopher Derose) as defendants. Part of the relief plaintiffs are seeking in this case is a refund of the allegedly overfunded Tier 1 plan which, they concede, includes "the State's mandatory contribution to the Tier 1 Plan." Plaintiffs' Response Brief, p. 5, fn. 5. Further, a review of the statutory scheme points unavoidably to the conclusion that the Judges' Retirement System is an arm of the State of Michigan. Accordingly, defendants are entitled to immunity under the Eleventh Amendment.

■  Dismissal of the state claims is appropriate under the supplemental jurisdiction statute, 28 U.S.C. § 1367(c), which states:

The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if -

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Each of the four listed grounds arguably applies in this case. The state claims clearly are "novel or complex." It also seems that the state claims "substantially predominate" over the federal claims, since the federal claims (Counts I, III, V and VII) are repeated verbatim as state claims (Counts II, IV, VI, and VIII), and two additional state claims (Count IX, "wasting trust"; and Count X, breach of fiduciary duties) are also asserted. Since the court is dismissing the federal claims on Eleventh Amendment grounds, subparagraph (3) applies as well.

The court also believes that "exceptional circumstances" are present because a closely related lawsuit challenging the constitutionality of the Judges' Retirement System is presently pending in the Michigan court system. That case was commenced in Michigan's 30th Circuit Court in 1994. Circuit Judge Lawrence M. Glazer of that court granted summary disposition for defendants, and the Michigan Court of Appeals subsequently reversed and remanded for further proceedings. *See Harvey v. State of Michigan,* 1997 WL 33354621 (Mich.App. Jan. 3, 1997). On remand, Judge Glazer again granted summary disposition for defendants, and on appeal the Michigan Court of Appeals once again reversed and remanded for further proceedings. *See Harvey v. State of Michigan,* 251 Mich.App. 323, 650 N.W.2d 392 (2002). The pendency of this related case in the Michigan court system, coupled with the strong interest a state has in providing a pension plan for state employees without federal interference, constitute "exceptional circumstances" within the meaning of § 1367(c)(4) which further convince the court that it would be inappropriate to exercise supplemental jurisdiction over plaintiffs' state claims.

### *Conclusion*

This case does not belong in federal court. Plaintiffs are state court judges who are challenging a statutorily created pension plan, in which state officials are administering state funds. There are serious federalism and Eleventh Amendment problems with a federal court deciding this case, especially given the fact that plaintiffs are asking the court to order the defendants, and therefore the State of Michigan, to change the way the pension contributions and benefits are calculated, to pay plaintiffs "excess" pension funds, to reimburse plaintiffs for the difference between what they have received and what 36th District Court judges have received, to give plaintiffs cost of living increases, and so on. The Eleventh Amendment prohibits a federal court from awarding any such monetary relief. Federalism concerns, as well as common sense, require that a case such as this be resolved in state court—particularly in light of the fact that a closely related case is currently pending in the Michigan courts.

For these reasons, the court concludes that defendants are entitled to Eleventh Amendment immunity as to plaintiffs' federal claims. Further, the court concludes that it should decline to exercise supplemental jurisdiction over plaintiffs' state claims. Accordingly,

IT IS ORDERED that defendants' motion to dismiss plaintiffs' federal claims (Counts I, III, V and VII) is granted. These claims are dismissed with prejudice.

IT IS FURTHER ORDERED that plaintiffs' state claims (Counts II, IV, VI,

VIII, IX, and X) are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

IT IS FURTHER ORDERED that defendants' motion for abstention or, alternatively, for a stay of proceedings, and plaintiffs' motion to strike affidavit of Daniel A. Norberg are denied as moot.